**MOUNTAIN STATES LEGAL FOUNDATION, on Behalf of its named member, Stephen B. ELLIS, and its unnamed members, Plaintiff,**

**v.**

**Elizabeth DOLE, individually and in her official capacity as the Secretary, United States Department of Transportation; R.A. Barnhart, individually and in his official capacity as the Administrator, Federal Highway Administration, United States Department of Transportation; Morris C. Reinhart, individually, and in his official capacity as the Regional Administrator, Federal Highway Administration; William D. Hurley, individually and in his official capacity as Director of the Utah Department of Transportation, and Mario Blanco, individually and in official capacity as Civil Rights Coordinator, Utah Department of Transportation, Defendants.**

Civ. A. No. 86–C–0778 A.

United States District Court,
D. Utah, C.D.

March 23, 1987.

Diane L. Vaksdal, Mountain States Legal Foundation, Denver, Colo., and James B. Lee, Parsons, Behle & Latimer, Salt Lake City, Utah, for plaintiff.

Margaret R. Nelson, Asst. U.S. Atty., Salt Lake City, Utah, and Richard S. Ugelow, Civil Rights Division, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER ON FEDERAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING

ALDON J. ANDERSON, Senior District Judge.

### INTRODUCTION

On August 28, 1986, plaintiff, Mountain States Legal Foundation (hereinafter MSLF) filed this action on behalf of its named member, Stephen B. Ellis and other unnamed members, seeking declaratory and injunctive relief from Section 105(f) of the Surface Transportation Assistance Act of 1982, 96 Stat. 2100, P.L. 97–424. The Act provides that not less than ten percent of all funds authorized by the Act must be spent on contracts with firms classified as either Disadvantaged Business Enterprises or Minority Business Enterprises, unless the Secretary of Transportation directs otherwise. Plaintiff's named member, Stephen B. Ellis, is a specialty landscape subcontractor who, plaintiff claims, has been denied the award of specialty subcontract work because he fails to qualify as a DBE–MBE. Plaintiff therefore asserts that the Act violates Ellis' civil rights by discriminating against him on the basis of his race[1] and should therefore, be declared unconstitutional.[2] Plaintiff also seeks damages on behalf of Ellis.

---

1. Specifically, plaintiff alleges violations of the Fifth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and Article I § 2 of the Utah Constitution.

2. 28 U.S.C. §§ 2201 and 2202.

On November 17, 1986, the federal defendants filed a motion to dismiss the complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure on the grounds that plaintiff, MSLF, lacks standing to maintain this action, either in its own right or on behalf of its member by way of the associational standing doctrine.[3]

### DISCUSSION

The issue in this case is whether MSLF has standing to bring a civil rights action on behalf of its member, Stephen B. Ellis. The principle that a party who requests a court of the United States to declare and enforce his legal rights must have standing is grounded in the "case or controversy" requirement of Article III of the Constitution. Without the existence of a legitimate controversy or the existence of a statute specifically authorizing invocation of the judicial process, federal courts are without authority to declare the legal rights of parties. The Court in *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) addressed the importance of judicial restraint in disputes which fail to pose a legitimate controversy, explaining that to be justiciable, the party seeking relief must allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."

In *Valley Forge College v. Americans United*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1981), the Court quantified the *Baker* requirement of "concrete adverseness." It said that, at an "irreducible minimum," the plaintiff must show that he has personally suffered some actual or threatened injury fairly traceable to the defendant's conduct and that a favorable decision is likely to redress the injury. Since MSLF alleges no injury to itself as an association, but only to Ellis and other unnamed MSLF members, the relevant inquiry is whether MSLF may bring suit in its own name as representative of those members.

It is clear that an association may have standing solely as a representative of its members, even in the absence of injury to itself, as long as the Article III requirements are met. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). It is equally clear, however, that this grant of associational standing does not eliminate or attenuate the constitutional requirement that the action present a legitimate case or controversy. *Id.* at 511, 95 S.Ct. at 2211.

Associations are, by their nature, organized to protect certain interests. Because of their singleness of purpose and substantial resources, associations are particularly susceptible to the temptation to bring suit to protect their interests in anticipation of their infringement. The Court in *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1971) made it clear that "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render [the case justiciable]."

Associational standing presents other concerns as well. It is necessary to the proper administration of justice that the injured persons be effectively and sincerely represented by the association which appears as a party on their behalf. Because associations typically consist of many members with potentially conflicting interests and views on any particular dispute, a danger exists that certain members of the association will be sympathetic to the adverse party. In such a case, there could be no legitimate controversy. It is therefore necessary to the "case or controversy" requirement that the association not merely represent an isolated member, but also hold the subject matter of the litigation as one of its central associational concerns.

In order to guarantee that Article III is satisfied in associational standing cases,

---

**3.** In its Complaint, MSLF professes to be "a non-profit, public interest, membership law foundation ... dedicated to the preservation of its members' constitutional rights, individual liberties and freedom of enterprise."

courts have developed a set of safeguards. In *Warth,* the Court laid down the seminal rule:

"The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit ... So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction."

422 U.S. at 511, 95 S.Ct. at 2211. The Court in *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) articulated the requirements in a three part test:

"an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

Defendants in this case acknowledge that plaintiff's claim satisfies the first part of the *Hunt* test, that Stephen B. Ellis has allegedly suffered injury, but assert that plaintiff fails the second and third parts of the test. The court examines each component separately.

## I. GERMANENESS

Defendants claim that by requiring that the organization's interest in the litigation be germane to its purposes, the law requires a direct relationship between the precise legal claim before the court and the organization's primary activities. They claim that since MSLF's central purpose is not to represent the interests of highway construction contractors, the present suit is not germane to the association's purposes. Plaintiff responds that by alleging deprivation of a member's civil rights, the present action is germane to its broadly articulated purposes, namely the legal representation of its members civil and constitutional rights.[4]

The problematic feature of MSLF's claim to standing is, therefore, its broad language of purpose. Since most cases have involved organizations with narrow goals, most courts addressing the question of germaneness have not found it necessary to define precisely what "purpose" it is that must be germane to the claim, much less how broadly that purpose may be stated.

The requisite nature of an association's purpose was elucidated in *MSLF v. Costle,* 630 F.2d 754 (10th Cir.1980), *cert. denied,* 450 U.S. 1050, 101 S.Ct. 1770, 68 L.Ed.2d 246. In that case, MSLF sued the Secretary of the Environmental Protection Agency on behalf of its officers, members and supporters who resided in areas which were designated by the EPA as non-attainment areas and were affected by the EPA's conditional approval of Colorado's air quality control proposals. The Tenth Circuit denied MSLF standing on the grounds that its members suffered no injury either as individuals or as members in the association. "There is no showing that [the members'] activities within the Mountain States organization have been or will be affected

---

**4.** MSLF's Articles of Incorporation declare its specific and primary purposes to include the following:

"1. To engage in nonpartisan legal research, study and analysis for the benefit of the general public as to the effect of evolving concepts of the law on our democratic institutions, with respect to both the public and private sectors;

3. To engage in litigation on behalf of itself, its members, individuals, state and local governments, corporations and other entities which may require representation in such litigation on issues found by the Board to be in the public interest, including but not limited to matters concerning the environment, energy, civil and constitutional rights, and acts of government agencies and departments having an impact upon the public, the free enterprise system and private property rights.

5. To advance the public interest by providing legal representation for others whose participation in litigation will assist in the accomplishment of that objective."

in any manner as a result of the challenged EPA actions." *Id.* at 768. Thus, in this circuit at least, it appears that for an association to have standing on behalf of its members, the members must be injured *qua* members.

One case that has directly addressed the question of how broadly the association's purposes may be stated in order for standing to exist is *Minnesota Public Interest Research Group v. Selective Service System,* 557 F.Supp. 925 (D.Minn.1983), in which MPIRG challenged certain policies of the Selective Service. Although the standing issue was eventually held to be moot in light of a Supreme Court ruling on the merits referred to in 747 F.2d 1204 (1984), the trial court initially denied standing on the grounds that, even though student-oriented, the association was concerned with broad issues of public interest and social welfare that affected its members less as students than as citizens generally. *Id.* at 933.

The court in *Associated General Contractors v. Otter Tail Power Co.,* 611 F.2d 684 (8th Cir.1979) also required a tight fit between the organization's purposes and the subject matter of the litigation. The plaintiff in that case sought to protect the right of member contractors to work on certain projects without having to sign a collective bargaining agreement. The court found that the litigation was not germane to the association's purposes, namely, the promotion of fair competition, the improvement of labor conditions and the elimination of unfair and unethical practices in the construction industry, since setting aside the Stabilization Agreement as requested would not further any of these purposes. *Id.* at 691. The court was unwilling to read expansively the stated purposes in order to grant standing.

Most organizations to which associational standing has been granted have existed to assist a discrete group with a specific inter-

est. *Peick v. Pension Benefit Guaranty Corp.,* 724 F.2d 1247 (7th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855. *Chicago-Midwest Meat Association v. City of Evanston,* 589 F.2d 278 (7th Cir.1978), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2895, 61 L.Ed.2d 318.

In *Hunt,* the Washington Apple Advertising Commission challenged the constitutionality of a North Carolina statute which allegedly discriminated against interstate commerce. The Court emphasized that the Commission had standing because it was "functionally" a trade association. 432 U.S. at 344, 97 S.Ct. at 2441. As a trade association, there could be little doubt that it held a singleness of purpose and thus would effectively represent its member apple producers.

In *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock;* —— U.S. ——, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986), the Supreme Court had no problem finding that the union's challenge of the Secretary's interpretation of Trade Act eligibility requirements for laid off employees was germane to the union's function of obtaining benefits for its members.[5] *See Reid v. Dep't of Commerce,* 793 F.2d 277 (Fed.Cir.1986), and *National Treasury Employees Union v. U.S. Merit Systems Protection Board,* 743 F.2d 895 (D.C.Cir. 1984).

In *NCAA v. Califano,* 622 F.2d 1382 (10th Cir.1980), the Tenth Circuit held that a claim seeking declaratory and injunctive relief regarding HEW regulations on sex discrimination in athletics was germane to the NCAA's purposes since the regulations pertained to intercollegiate sports programs. And in *Church of Scientology of California v. Cazares,* 638 F.2d 1272 (5th Cir.1981), a civil rights and defamation action was found to be germane to the Church's purpose of serving the spiritual needs and desires of its members where

---

5. The Court noted that Congress had given unions a role in the administration of the Trade Act and had given them authority to petition the Secretary for certification that particular firms had been adversely affected by imports. The UAW's Constitution also stated as one of the

union's goals "to work for legislation on a national scale having as its object the establishment of real social and unemployment insurance, the expense of which is to be borne by the employer and the Government." *Id.* 106 S.Ct. at 2531.

the defendant's statements allegedly inflamed public sentiment against the members because of their affiliation with the Church.

■ Whether or not the subject matter of the present action technically falls within the association's broadly stated concerns is not the issue. The requirement that litigation be germane to an association's purposes when the association sues in a representative capacity grows out of the case or controversy requirement of Article III and exists to assure that an association that brings suit in its own name have, through its goals and purposes as an association, a vested interest in the outcome of the litigation, even if it has suffered no injury to itself. "The requirement that a party seeking review must allege facts showing that he is himself adversely affected.... [is] at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome." *Sierra Club,* 405 U.S. at 740, 92 S.Ct. at 1368. To assert that the "germaneness" requirement can be met by any broad statement of purpose violates the spirit of the rule. Defendants correctly point out that if MSLF is granted standing here, then any association, by placing sweeping language in its charter, could become eligible to represent any of its members on any issue—constitutional or otherwise. As the Court said in *Valley Forge College:*

"The federal courts have abjured appeals to their authority which would convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.' United States v. SCRAP, 412 U.S. 669, 687 [93 S.Ct. 2405, 2416, 37 L.Ed.2d 254] (1973). Were the federal courts merely publicly funded forums for the ventilation of public grievances or the refine-

ment of jurisprudential understanding, the concept of 'standing' would be quite unnecessary. But the 'cases and controversies' language of Art. III forecloses the conversion of courts of the United States into judicial versions of college debating forums."

454 U.S. at 473, 102 S.Ct. at 759. It is clear, therefore, that the broad language in MSLF's Articles of Incorporation is insufficient to sustain its claim for standing under the germaneness requirement as developed in the opinions.

## II. INDIVIDUAL PARTICIPATION

The third *Hunt* requirement is that neither the claim asserted nor the relief requested require the participation in the litigation of individual members. The rule is violated when an association requests damages for an injured member since such a request suggests that more is at stake than just the vindication of the association's concerns. A request for damages contravenes the principle that relief should inure to the benefit of the association's members. The Court in *Warth* explained that

"whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought ... [In the present case] the damages are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof."

422 U.S. 515, 95 S.Ct. at 2213.[6] The Court also noted that in all previous cases in which associational standing had been

6. In *Warth,* the plaintiff Home Builders claimed that the zoning restrictions in Penfield, New York discouraged construction of low and moderate income housing, depriving some of its members of "substantial business opportunities and profits." The Court stated:
   "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would

require individualized proof. Thus, to obtain relief in damages, each member of Home Builders who claims injury as a result of respondents' practices must be a party to the suit, and Home Builders has no standing to claim damages on his behalf."
*Warth,* 422 U.S. at 515–16, 95 S.Ct. at 2214. *See Associated General Contractors,* 611 F.2d at 691.

granted, only injunctive and declaratory relief had been requested.[7]

In *Telecommunications Research & Action Center v. Allnet Communication Services, Inc.*, 806 F.2d 1093, (D.C.Cir. 1986), the appellate court held that damages sought by the plaintiff association on behalf of five or six of its 12,000 members required precisely the type of individual participation that renders associational standing impermissible. Alleging that the utility had charged its customers different rates on the basis of an unlawful dual rate structure, the plaintiff argued that a "simple formula" would suffice to establish the amount of damages for each injured member. Rejecting this argument, the court noted that "individualized participation" refers not merely to the nature of proof at trial, but also to the nature of the claim itself. Quoting from Justice Powell's dissent in *UAW*, the court said that " '[t]he number of members in [an] organization with a concrete stake in the outcome may be so small that th[e] theoretical identity [between the organization and its members] disappears.... Moreover, [an association] may have reasons for instituting a suit ... other than to assert rights of its members.' " *Id.* at 1095.

■ Unlike MSLF, TRAC sought only damages and the court suggested that the rule might be relaxed in cases where the monetary relief sought is "merely ancillary" to declaratory or injunctive relief. MSLF's claim for $50,000 in damages for Ellis, however, can hardly be considered ancillary and therefore vitiates its claim for associational standing.

On the question of individualized participation, the Court in *Brock* noted that standing was permissible in that case because "[n]either these claims nor the relief sought required the District Court to consider the individual circumstances of any aggrieved UAW member. The suit raises a pure question of law: whether the Secretary properly interpreted the Trade Act's TRA eligibility provisions." *Brock*, 106 S.Ct. at 2532. Clearly, neither MSLF's claim nor its request for damages for Ellis is a pure question of law that could be adjudicated without reference to Ellis' particular circumstances. *See Terre Du Lac Association, Inc. v. Terre Du Lac, Inc.*, 772 F.2d 467 (8th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1460, 89 L.Ed.2d 718.[8]

Moreover, in *NCAA v. Califano*, the Tenth Circuit elaborated on the individualized participation rule, stating that if more members openly oppose the association's position in the litigation than openly favor it, then associational standing is lost. The rationale for this requirement was that there could be no case or controversy where the association as a party was itself divided on the preferred outcome of the litigation. In *NCAA*, many of the member colleges also belonged to a women's intercollegiate sports association which was on the other side of the litigation. The court noted that "[i]n the usual associational standing case, what the association wants to achieve in the lawsuit is unquestionably what its members want. But the appellees correctly contend that we cannot assume that any of the member colleges supports the NCAA [in this litigation]." *NCAA*, 622 F.2d at 1391. Similarly, in the present case, given the absence of a commonly held, narrowly focused purpose which sets

7. In *Simer v. Rios*, 661 F.2d 655 (7th Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177, the Gray Panthers of Chicago brought suit alleging improper denial of heating assistance to some of its members. The court denied the association standing because, in addition to declaratory relief, it sought damages for its injured members. Since this necessitated proof of discrimination against each allegedly injured member, individual participation was needed, in violation of the *Hunt* test. *Id.* at 682. *See Parks v. U.S. Internal Revenue Service*, 618 F.2d 677 (10th Cir.1980).

8. The court in *O'Hair v. White*, 675 F.2d 680 (5th Cir.1982) was faced with a challenge by an athiestic organization, the Society of Separationists, to a section of the Texas Constitution requiring acknowledgement of a belief in a supreme being in order to hold public office. The court found that the society could sue on behalf of its members at large because it "was organized to defend against exactly this kind of harm," but that it could not raise its member's individual due process and equal protection claims because both claims required the member's individual participation. *Id.* at 692.

the association's members apart from the general citizenry, the court cannot assume that any of MSLF's members other than Stephen Ellis would support this suit. In *NCAA*, standing was granted because, in fact, the member colleges had formally approved of the lawsuit. It is entirely conceivable in this case, however, that many members of MSLF would oppose this litigation either on ideological grounds or even because they are the beneficiaries of the Act's affirmative action provisions. Indeed, at oral argument, counsel for MSLF conceded that the decision to sue is made by the association's Board of Directors rather than by the members as a whole.

A suit by an association on behalf of one of its members is the exception rather than the rule. Underlying the limitation that no individualized participation be required is a desire on the part of the courts to guarantee that when an association appears as a party to a law suit, it is the most appropriate entity to do so. If it is not a more appropriate party than the injured member, then it is the injured member who should be bringing suit. As the Supreme Court declared in *Duke Power Company v. Carolina Environmental Study Group*, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978), a powerful reason for denying standing to third parties is to "[assure] that the most effective advocate of the rights at issue is present to champion them." At oral argument, MSLF was unable to proffer any reason why Ellis should not be the named plaintiff. Indeed, MSLF has failed to demonstrate that Ellis has even authorized it to bring suit on his behalf. Consequently, this case is emblematic of the danger that an association may seize upon incidents in the lives of its members in order to vindicate the ideological positions of its directors, even though no true case or controversy exists. As the EPA successfully argued before the Tenth Circuit in *Costle*, 630 F.2d at 761, " 'one party should not be permitted to rest his claim to relief on the rights of another who does not press those rights.' "

The plaintiff has appropriately cited cases in which it has brought suit in behalf of its members without the difficulties encountered here. Those cases involved claims of possible injury to property interests which it was claimed were adversely affected by the failure of the government and its agents to properly carry out duties enjoined by law. In the court's opinion the facts here are different and the claimed basis for representation by the Mountain States Legal Foundation is both legally and factually flawed under the precedent that the court believes applies as noted above.

It is therefore the court's conclusion that the Rule 12 motion of the defendants for dismissal should be granted.