The MARYLAND HIGHWAYS CONTRACTORS ASSOCIATION, INCORPORATED, Plaintiff–Appellant,

v.

STATE OF MARYLAND; James J. McGinty, Secretary, Board of Public Works; Earl F. Seboda, Secretary, Department of General Services; Richard H. Trainor, Secretary, Department of Transportation; Joseph I. Shilling, Chairman, Interagency Committee on School Construction; Henry L. Hein, Chairman, Maryland Food Center Authority; Herbert J. Belgrad, Chairman, Maryland Stadium Authority; John S. Toll, Chancellor, the University of Maryland System; Charles L. Benton, Director, Department of Budget and Fiscal Planning, Defendants–Appellees.

No. 90–3102.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1991.

Decided May 20, 1991.

---

Leslie Robert Stellman, argued (John William Kyle, on brief), Littler, Mendelson, Fastiff & Tichy, Baltimore, Md., and Walter Howard Ryland, argued (Waylund E. Hundley, on brief), Williams, Mullen, Christian & Dobbins, P.C., Richmond, Va., for plaintiff-appellant.

Ralph S. Tyler, Asst. Atty. Gen., argued (J. Joseph Curran, Jr., Atty. Gen., and Andrew H. Baida, Asst. Atty. Gen., on brief), Baltimore, Md., for defendants-appellees.

Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

ERVIN, Chief Judge:

The Maryland Highway Contractors Association, Inc. ("Association") sought de-

claratory and injunctive relief against the State of Maryland ("Maryland") and several state officials in their official capacities in the United States District Court for the District of Maryland. Specifically, the Association wanted a determination that Maryland's Minority Business Enterprise [1] ("MBE") statute and accompanying regulations violated the constitutional and statutory rights of the Association and its members. By a motion for summary judgment, Maryland challenged the Association's standing to sue, and the district court granted the motion, finding no standing.

In the interim between the district court's decision and this appeal, the Maryland legislature repealed the MBE statute at issue here and replaced it with a new one. We find that this repeal and subsequent enactment rendered this case moot, and so we hereby vacate the district court's decision and remand to the district court with instructions to dismiss.

## I.

The Association is an organization of contracting firms whose members regularly bid on highway construction projects. The Association brought suit alleging that the 1988 MBE statute and accompanying regulations violate the Constitution and federal statutes. The Association claimed that the statute and regulations violate the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 2000d, and 42 U.S.C. § 1983.

Maryland moved for summary judgment on the ground that the Association had no standing to sue. Extensive discovery was conducted on the issue of standing, and the district court held a hearing to resolve the issue. After oral argument, the district court agreed with Maryland that the Association lacked standing to sue and granted Maryland's motion for summary judgment on that basis. This appeal followed.

## II.

In 1978, Maryland adopted a statutory and regulatory scheme designed to encourage participation by MBEs certified by state law and to provide a fair share of contracts to MBEs for the procurement of supplies and services. The version of the statute in effect at the start of these proceedings was Md. State Fin. & Procurement Code Ann. § 14–302(a)(1), (2) (1988) (*repealed* by 1990 Md. Laws Ch. 708). The 1988 MBE scheme set a goal for several Maryland departments to award 10% of their total dollar of procurement contracts either directly or indirectly to certified MBEs. The departments included: The Department of General Services; the Interagency Committee on School Construction; the Maryland Food Center Authority; the Maryland Stadium Authority; and the University of Maryland System. Md. State Fin. & Procurement Code Ann. § 14–302(b)(1) (1988) (*repealed* by 1990 Md. Laws Ch. 708). The Department of Transportation was supposed to achieve the same goal, but only with respect to procurement contracts totalling $100,000 or more. Md. State Fin. & Procurement Code Ann. § 14–302(b)(2) (1988) (*repealed* by 1990 Md. Laws Ch. 708).

The 1988 MBE statute directed the Maryland Board of Public Works to adopt regulations to achieve the goals of the statute. *See* Code of Maryland Regulations (COMAR) 21.11.03.01 *et seq.* The regulations adopted set forth the following requirements: (1) each contract solicitation must set out the expected degree of MBE participation; (2) the relevant state agency must provide a list of certified MBEs to each prospective contractor. The regulations also set out provisions that ensure the uniformity of requests for bids; provisions that ensure the timing of requests and submissions of bids on subcontracts; and provisions that ensure that the State is not

---

**1.** In 1988, a Minority Business Enterprise was defined as a legal entity that was at least 51% owned or controlled by one or more members of a group "that is disadvantaged socially or economically, including: 1. Alaskan natives; 2. American Indians; 3. Asians; 4. Blacks; 5. His-

panics; 6. Pacific Islanders; 7. women; or 8. physically or mentally disabled individuals." Md. State Fin. & Procurement Code Ann. § 14–301(e) (1988) (*repealed* by 1990 Md. Laws Ch. 708).

fiscally disadvantaged by inadequate responses by MBEs to requests for bids. COMAR 21.11.03.01 *et seq.*

The regulations also provided that MBE participation may be waived under certain circumstances. COMAR 21.11.03.11. Waiver might be obtained if the contract bidder could make a reasonable demonstration that MBE participation was not obtainable, or was not obtainable at a reasonable price, but only if the state procurement agency decided that the public interest would be served by the waiver. *Id.*

### III.

On July 1, 1990, after the decision by the district court in this case, the Maryland legislature repealed the MBE statute and enacted a new and revised MBE statute to replace it. *See* Md. State Fin. & Procurement Code Ann. §§ 14–301 *et seq.* (1990). The new statute, by its terms, attempts to comply with the Supreme Court's holding regarding MBE statutes in *City of Richmond v. Croson*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989).[2]

Maryland commissioned a Minority Business Utilization Study, held legislative hearings, and determined that Maryland had engaged in discrimination against certain groups. *See* 1990 Md. Laws Ch. 708, preamble. As a result of the study, the Maryland legislature enacted a new MBE statute protecting those classes of minorities which the study showed Maryland had discriminated against: American Indians; Asians; Blacks; Hispanics; women; and physically or mentally disabled individuals. Md. State Fin. & Procurement Code Ann. § 14–301(f) (1990). The legislature thus repealed the former portion of the statute which protected Alaskan natives and Pacific Islanders. *Compare* Md. State Fin. & Procurement Code Ann. § 14–301(f) (1990) *with* Md. State Fin. & Procurement Code Ann. § 14–301(e) (1988) (*repealed* by 1990

Md. Laws Ch. 708). Most of the remaining provisions in the MBE statute were not changed by the new MBE law.

### IV.

■ The district court held that the Association lacked standing to sue in this case. We must review the court's holding "in light of [the state] law as it now stands, not as it stood when the judgment below was entered." *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 414, 92 S.Ct. 574, 575, 30 L.Ed.2d 567 (1972) (per curiam); *Fusari v. Steinberg*, 419 U.S. 379, 387, 95 S.Ct. 533, 538, 42 L.Ed.2d 521 (1975). As noted above, the Maryland legislature repealed the MBE statute which was effective when the district court rendered its decision, replacing the old MBE statute with a new one. The actions by the Maryland legislature had the effect of rendering the Association's case moot.

A case is moot when it has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *Diffenderfer*, 404 U.S. at 414, 92 S.Ct. at 575 (quoting *Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969)). Here, we would be rendering an advisory opinion if we reached the merits of this case. The statute challenged by the Association no longer exists; a new statute replaced it. In order to determine if someone has been injured by the new statute, we would need more information about the new statute than is presently before us. "We are unable meaningfully to assess the issues in this appeal on the present record." *Fusari*, 419 U.S. at 387, 95 S.Ct. at 539.

The Association asserts that the new statute has "only minor, insignificant modifications" from the old one. We disagree. The new statute was enacted after an inde-

---

**2.** In *Croson*, the Supreme Court held that a state or municipality must show that it had actually discriminated against minority groups before it could enact remedial legislation. 488 U.S. at 492, 109 S.Ct. at 720. The Court explained:

> While the states and their subdivisions may take remedial action when they possess evi-

dence that their own spending practices are exacerbating a pattern of prior discrimination, they must identify that discrimination, public or private, with some specificity before they may use raceconscious relief.

488 U.S. at 504, 109 S.Ct. at 727.

pendent study was conducted to ascertain whether Maryland participated in discrimination. As a result of the study, the new statute eliminated two of the groups previously protected by the MBE statute. These facts show that Maryland was attempting to meet the requirements of the Supreme Court's holding in *City of Richmond v. Croson*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). Whether Maryland's new statute meets the requirements of *Croson* will likely be the subject of a challenge to the new statute. However, we do not have enough facts before us in this case to evaluate the new statute in light of *Croson*. As a result, the present case is moot.

When a case is rendered moot while on appeal, the established practice is to reverse or vacate the judgment below and remand with a direction to dismiss. *United States v. Munsingwear*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). Because we hold that the Association's claim against Maryland is moot, we vacate the district court's order granting summary judgment to Maryland, and we direct that court to dismiss this case as moot.

### V.

Because of the likelihood of a new attack upon the constitutionality of the present Maryland MBE statute, we elect to address the issue of standing in order to guide subsequent litigation.

■ Standing is a component of a federal court's limited jurisdiction. Article III of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies." U.S. Const. art. III. The requirement of standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wished to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). Thus, in order to have standing, a party must be able to demonstrate a "distinct and palpable injury" that is likely to be redressed if the requested relief is granted. *Valley Forge College v. Americans Unit-ed*, 454 U.S. 464, 488, 102 S.Ct. 752, 767, 70 L.Ed.2d 700 (1982).

■ Associations can allege standing based upon two distinct theories. First, the association "may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). Second, the association may have standing as the representative of its members who have been harmed. *Id.* *See also Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

### A.

■ In this case, the Association has no standing to sue in its own right. When determining whether an association has standing, a court conducts the same inquiry as in the case of an individual, determining if the plaintiff alleged such a personal stake in the outcome of the matter to warrant his invocation of federal court jurisdiction. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79, 102 S.Ct. 1114, 1124–25, 71 L.Ed.2d 214 (1982); *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Here, the Association has not alleged a sufficient personal stake. In the complaint, the Association alleged that it and its members had been injured in their business or property. However, during discovery, the Association came forward with no evidence that it had been so injured. In fact, the president of the Association admitted that the Association could not prove that it had lost any membership dues. To the contrary, the president stated that the Association had gained at least one member as a result of filing the current suit, with that member adding $5,000 in annual dues. Thus, the Association has failed to put forth any evidence that it was injured economically by the MBE statute.

■ The Association argued that it had suffered a non-economic injury to its "organizational purpose" due to the MBE statute. The Association points to its charter

and bylaws in support of this contention. However, as the Supreme Court has noted,

> an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Article III. Insofar as these organizations seek standing based on their special interest [in the subject matter of litigation] their complaint must fail. Since they allege no injury to themselves as organizations, ... they can establish standing only as representatives of those of their members who have been injured in fact, and thus could have brought suit in their own right.

*Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976). In this case, although the Association alleges that its broad purposes have been violated by the MBE statute, this type of injury is insufficient to support standing. *See Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972).

### B.

■ Although an organization does not have standing in its own right, it may have representational standing. *Warth v. Seldin,* 422 U.S. at 511, 95 S.Ct. at 2211. The Supreme Court set out a three part test for representational standing for organizations in *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). An organization has representational standing when (1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit. *Id.* at 343, 97 S.Ct. at 2441; *Virginia Hosp. Ass'n v. Baliles,* 868 F.2d 653, 662 (4th Cir.1989), *aff'd sub nom. Wilder v. Virginia Hosp. Ass'n,* 496 U.S. ——, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990).

Thus, we must first determine whether any of the Association's members have the right to sue in their own right. The Association alleged in its complaint that its members had been injured by the statute. However, in its answers to numerous interrogatories on this subject, the Association admitted that: (1) it had no information concerning any member who may have lost a bid or contract or lost profits as a result of the MBE statute; (2) it had conducted no studies to ascertain whether members had been so injured; and (3) it possessed no documents relating to members' lost profits.

In his deposition, the president testified that the Association had no evidence to support its claim that the MBE statute results in higher construction costs. However, the Association relies upon a letter from one of its members, which was referred to in the president's deposition, and was attached as an exhibit thereto. The letter talks generally about problems that the company perceives are associated with the MBE requirements. However, the only mention of any direct economic injury occurs during a discussion of requirements of the City of Baltimore, not of the State of Maryland.

The district court stated that the letter was inadmissible hearsay. In addition, the court noted that the president of the Association had conceded in his deposition that the Association had taken no steps to verify the letter's claim. Further, the court noted that the Association had no evidence to support the letter's claim. The court did not, as the Association states, merely hold that the letter was inadmissible hearsay. Rather, the court further discussed the letter in light of the contrary testimony of the Association's president. Ultimately, the court concluded that the Association failed to establish that its members could sue in their own right, thus failing the first prong of the *Hunt* test.

■ The district court properly found that the letter did not show a sufficient injury in fact. First, several circuits, including the Fourth Circuit, have stated that hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment. *See, e.g., Rohrbough v. Wyeth Laboratories, Inc.,* 916 F.2d 970,

973–74 n. 8 (4th Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990); *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 570 n. 4 (7th Cir.1989); *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1319 (8th Cir.1986). Thus, the district court was correct to state that the letter was inadmissible hearsay.

Second, even if we were to hold that the evidence in the letter was admissible, it would not be enough to withstand a summary judgment motion. As the Supreme Court said in *Anderson v. Liberty Lobby, Inc.*,

> [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (quoting *Improvement Co. v. Munson*, 14 Wall 442, 448, 20 L.Ed. 867 (1872)). The Association stated that it had no data, conducted no studies, and could not come forward with the name of a single firm who would state that it had been injured. In light of this overwhelming evidence of lack of injury to members of the Association, the passing mention of economic harm in a letter of questionable reliability was not enough evidence for a jury to find by a preponderance of the evidence that any member suffered an injury.

The Association relies upon *Contractors Ass'n of Eastern Pennsylvania, Inc. v. City of Philadelphia*, 735 F.Supp. 1274 (E.D.Pa.1990), for support of its claim that the Association's members have been injured. The Association claims that the case is on all fours with the case at bar. In that case, however, the court found that only the associations whose members had alleged specific harm had standing. *Id.* at 1283–84. The associations who came forward with evidence that their members had been denied bids, for example, were found to have standing. *Id.* at 1283. However, those associations who only came forward with evidence that their members "generally bid on these types of projects" did not "provide sufficient details of the injury suffered to meet the Article III requirement." *Id.* at 1284. In the case at bar, the evidence that the Association came forward with was similarly insufficient to meet the Article III requirement.

In sum, the Association did not meet the first prong of the *Hunt* three-prong test for representational standing. In addition, the Association also failed to meet the third prong of the *Hunt* test. The district court found it unnecessary to reach this issue because of its finding that the Association did not meet the first prong of the *Hunt* test, but we deem it not amiss to do so.

■ Prong three of the *Hunt* test provides that neither the claim nor the relief requested can require the participation of individual members. 432 U.S. at 343, 97 S.Ct. at 2441. This prong is not met when conflicts of interest among members of the association require that the members must join the suit individually in order to protect their own interests. *See Associated General Contractors of North Dakota v. Otter Tail Power Co.*, 611 F.2d 684, 691 (8th Cir.1979). The Eighth Circuit explained this prong in *Associated General Contractors of North Dakota v. Otter Tail Power Co.*:

> [T]he claim asserted requires the participation of the individual members of the association. The association is clearly not in a position to speak for its members on the question of whether the [agreement] is violative of antitrust laws. Their status and interests are too diverse and the possibilities of conflict too obvious to make the association an appropriate vehicle to litigate the claims of its members. Some members are not qualified and others are not willing to work on the project; *some stand to benefit from working on the project under the Agreement and still others will be hurt*

*by not being able to do so....* It is for the court, not the members of the association, to determine whether their interests require individual representation. Here, in view of the actual and potential conflicts, they clearly do.

*Id.* at 691 (emphasis added). Like the members of the association in *Associated General Contractors*, the members of the Association in this case have conflicting interests. Some of the members of the Association are certified MBEs; they benefit from the continued enforcement of the MBE statute. Other non-minority members of the Association would benefit if the MBE statute were declared unconstitutional. Thus, there are actual conflicts of interest which would require that the individual members come into the lawsuit to protect their interests.

In a similar case, the United States District Court for the District of Utah granted the defendant's motion for summary judgment on the ground that the plaintiff had failed to meet the third prong of the *Hunt* test. *Mountain States Legal Foundation v. Dole*, 655 F.Supp. 1424 (D.Utah 1987). The court explained:

> It is entirely conceivable in this case, however, that many members of [the association] would oppose this litigation on ideological grounds or even because they are the beneficiaries of the Act's affirmative action provisions. Indeed, at oral argument, counsel for [the association] conceded that the decision to sue is made by the association's Board of Directors rather than by the members as a whole.

*Id.* at 1431. Similarly, in the present case, the decision to litigate this case was made by the Board of the Association, on which there is no MBE representative. Further, the Board took the unusual position of not telling the members of its decision to litigate until after the suit had already been filed. This secrecy raises suspicion regarding the motives of the Association. Because of the actual conflict of interest and the potential for conflict in this case, the Association has failed to meet the third prong of the *Hunt* test.

Since the Association failed to meet the first and third prongs of the *Hunt* test, entry of summary judgment in favor of Maryland was proper. As a plaintiff, the Association had the burden of proving that it had standing to sue. Because it failed to prove this essential element of its case, the district court correctly ruled that the Association lacked standing.

VI.

To summarize, because of the repeal of the old MBE statute and the subsequent enactment of the new MBE statute by the Maryland legislature, the Association's claim against Maryland was rendered moot. In addition, the district court correctly found that the Association lacked standing to sue under the present facts. Because this case is now moot, we vacate the decision of the district court and remand with instructions to dismiss.

VACATED AND REMANDED.