**BAY TOBACCO COMPANY, LLC., Plaintiff,**

v.

**CONTINENTAL DISTRIBUTION, LLC., Defendant.**

**No. 3:03CV130.**

United States District Court, E.D. Virginia, Richmond Division.

July 18, 2003.

Steven Scott Biss, Richmond, VA, for Plaintiff.

Charles Michael Sims, David James Sensenig, LeClair Ryan, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

### (Granting Defendant's Motion for Summary Judgment as to All Counts in the Amended Complaint)

HUDSON, District Judge.

This matter was before the Court on July 17, 2003 for oral argument on Defendant's Motion for Summary Judgment. Both parties submitted detailed memoranda, with supporting affidavits and exhibits.

This is a commercial dispute between a cigarette manufacturer and distributor. The underlying controversy arose when the manufacturer, Bell Quality Tobacco Products, LLC ("Bell" or "Bell Quality"), ceased producing cigarettes for Plaintiff, Bay Tobacco Company, LLC ("Bay" or "Bay Tobacco") and instead began producing for the defendant, Continental Distribution, LLC ("Continental"). Plaintiff contends that Bell Quality's decision to produce cigarettes exclusively for Continental was part of a conspiracy intended to damage Bay Tobacco. Continental denies any improper or unlawful motive and maintains that its production agreement with Bell Quality was a lawful business decision.

Based on a review of the pertinent pleadings, depositions, answers to interrogatories, affidavits, and exhibits, this

Court is of the opinion that there is no genuine issue as to any of the material facts in dispute. Furthermore, the defendant has not identified with reasonable particularity sufficient evidence from which a jury could return a verdict in its favor. Therefore, for the reasons discussed below, summary judgment will be granted as to each count of the Amended Complaint

The Amended Complaint in this case contains four counts: conspiracy, tortious interference with business, conversion, and defamation. The Court will analyze the claims in that order.

■ Plaintiff alleges that "Bell and Continental combined, associated, agreed or acted in concert for the purposes of willfully and maliciously injuring Bay Tobacco in its trade and business and of procuring a breach of the agreement." Am. Comp. ¶ 42. Although the parties dispute the existence of a contract, for the purpose of deciding this motion the Court will assume that Bell Quality executed a written contract to produce cigarettes for Bay Tobacco. Even assuming the existence of a Bell–Bay contract, however, Bay Tobacco has offered no proof that Defendant Continental entered into any type of association or agreement with Bell Quality in order to injure Bay Tobacco in its trade or business. Continental concedes that Bell Quality entered into an agreement to deal exclusively with Continental. That particular agreement was inspired by a number of factors including Bell Quality's inability to produce enough cigarettes to satisfy the demands of multiple distributors and Continental's ability to pay a higher price for production than other competing distributors.

Bay's conspiracy claim evolves from a number of isolated facts. First, Continental wanted one hundred percent (100%) of Bell Quality's production capacity. Second, Continental intended to be an ag-

gressive distributor of cigarettes. Third, Continental was obviously aware of Bay Tobacco's production agreement with Bell Quality. Fourth, one of Continental's owners commented that if Bay Tobacco filed for bankruptcy, "they" would "get" the Chesapeake label. Fifth, a jury could logically infer that the cessation of cigarette production would be financially ruinous for Bay Tobacco. Lastly, Continental was a competitor of Bay Tobacco that, as a result of Bay's demise, may have gained Bay's customers.

Viewing the evidence in the light most favorable to Plaintiff, the Court is of the opinion that there is insufficient evidence from which a reasonable trier of fact could conclude that Bell and Continental entered into a conspiracy for the purpose of willfully and maliciously injuring Bay Tobacco or to cause a breach of Bay's agreement with Bell Quality. Instead, what the evidence reveals is a legitimate business decision, made by Continental, to enhance its production by entering into an agreement with Bell Quality. Even assuming that any agreement existed between Bay Tobacco and Bell Quality, it did not preclude a strategic alliance between Bell and Continental, since Bay's agreement was terminable on thirty (30) days' notice. In the absence of an agreement intended to injure Bay's business, any incidental, adverse impact of Continental's otherwise-legitimate business decision is not actionable.

■ Count II of the Amended Complaint alleges tortious interference with business. The plain language of Count II asserts that Continental interfered with Bay Tobacco's relations with its customers. Am. Comp. ¶¶ 47–48. According to the Amended Complaint, Bay Tobacco maintains that Continental tortiously interfered with its customer relations by causing Bell Quality to cease production of Bay's ciga-

rettes, which was a breach of the Bell–Bay production contract. At best, the Bell–Bay contract was terminable at will upon receipt of thirty (30) days' notice. As discussed above, there is no evidence to support the allegation that Continental employed any improper or illegal means in crafting its agreement with Bell Quality. Bay has offered no evidence of any intentional acts on Continental's part that were directed toward Bay Tobacco. On the contrary, Continental was an aggressive tobacco distributor that was unable to fulfill its own customers' demands. Continental's agreement with Bell Quality for exclusive production was driven by each company's desire for increased profits, neither giving conscious regard to the effect this would have on Bay Tobacco. Thus, Bay Tobacco's allegation of tortious interference lacks both factual and legal moorings.

■ Turning to Count III, which alleges conversion, this claim also fails to survive Defendant's summary judgment challenge. In its Amended Complaint, Bay Tobacco contends that "[a]fter Bay Tobacco learned of Bell and Continental's conspiracy, Bay demanded the return of all their product and property located at Bell's plant. The Defendants have refused to return Bay Tobacco's property." Am. Comp. ¶ 54.

In support of its claim, Bay Tobacco offers the affidavit of a former Bell Quality plant manager who states that during the relevant time period, the owners of Continental were present daily at Bell's production facility and claimed to be in charge of the operation. In his affidavit, the former manager described Continental's owners as "calling all the shots." Bay Tobacco also notes that the owners of Continental were aware that Bay's materials were present at the Bell production facility. Moreover, the testimony and exhibits in the record suggest that Continental and Bell Quality contemplated a merger. Bay offered no evidence, however, to show that

a final merger agreement was reached. Continental countered with an affidavit stating that the Bell–Continental merger attempt had failed.

Although the owner of Bell Quality, through an affidavit tendered by Continental, advances a number of business reasons for withholding Bay's packaging materials, the Court need not consider the legitimacy of those reasons at this point in its analysis. Bay Tobacco has introduced no evidence whatsoever from which a reasonable trier of fact could conclude that Continental participated in Bell Quality's decision to withhold Bay's materials. Consequently, summary judgment will be granted on Count III.

■ Count IV of the Amended Complaint alleges defamation. Specifically, Bay Tobacco avers that "Bell and Continental repeatedly published untruthful and slanderous comments about Bay Tobacco and its business to distributors and customers in Virginia. Bell and Continental stated that Bay Tobacco was 'going out of business.'" Am. Comp. ¶ 61. There is simply no evidence in the record to support such a claim. Most importantly, Bay Tobacco has offered no evidence to show which, if any, Continental representative(s) or agent(s) stated that Bay Tobacco was going out of business. Bay's affidavits merely recite second- and third-hand rumors that two Bay customers overheard repeated somewhere in the industry.

■ Clearly, such statements are hearsay and would not be admissible in evidence at the trial of this case. Under Federal Rule of Civil Procedure 56(e), this Court may not consider such affidavits in deciding the motion for summary judgment. See *Maryland Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir.1991). Consequently, Plaintiff's defamation claim lacks evidentiary foundation and will be dismissed.

An appropriate Order will accompany this memorandum.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.