UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANDRE B. HUNTER; PAULETTE I.
HUNTER,

           *Plaintiffs-Appellants,*

        v.

PRINCE GEORGE'S COUNTY,
MARYLAND; RON HASSAN,
individually and as Battalion Chief
of Prince George's County
Maryland's Fire Department; JOHN
FLETCHER, individually and as
Assistant Battalion Chief of Prince
George's County Maryland's Fire
Department; TERRY LLOYD,
individually and as Captain in the
Prince George's County Maryland's
Fire Department,

           *Defendants-Appellees,*

        and

COUNTY EXECUTIVE AND COUNTY
COMMISSIONERS OF PRINCE GEORGE'S
COUNTY; PRINCE GEORGE'S COUNTY
FIRE DEPARTMENT; RITCHIE
VOLUNTEER FIRE COMPANY,
INCORPORATED,

           *Defendants.*

No. 01-1318

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-98-2434-DKC)

Argued: April 2, 2002

Decided: June 4, 2002

Before WILKINS, TRAXLER, and GREGORY, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Maury S. Epner, MILLER, MILLER & CANBY, Rockville, Maryland, for Appellants. Rhonda Lee Weaver, Associate County Attorney, Upper Marlboro, Maryland, for Appellees. **ON BRIEF:** Sean D. Wallace, County Attorney, Upper Marlboro, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Andre Hunter and his wife appeal from the district court's grant of summary judgment against their claims of employment discrimination and various civil rights violations. We affirm.

I.

Andre Hunter, an African-American, worked as a firefighter for Prince George's County, Maryland. In April or May 1996, Hunter was transferred to the Central Communications Facility ("CCF") on

a light-duty assignment after injuring his ankle. His supervisors there were Captain Theresa Lloyd, Battalion Chief Ronald Hassan, and Major John Fletcher.

In July 1996, Hunter was charged with being unfit for duty after a positive breath-alcohol test. Hunter thereafter requested and received a short-term transfer to another light duty assignment. In late July, Hunter returned to the CCF building to clean out his locker. Two police officers, who mistakenly believed that Hunter had been suspended and was not allowed in the building, confronted Hunter and told him to leave the building immediately. As Hunter began to drive away from the building in the fire department vehicle that had previously been assigned to him, other police officers ordered him to stop and asked whether he had stolen the car. After a few minutes, Hunter was allowed to leave. Hunter was later charged with attempting to bribe the officer who performed the breath-alcohol test. He was cleared of that charge and of the unfit-for-duty charge.

Thereafter, Hunter filed racial discrimination charges with the fire department's Equal Opportunity Officer and with the Equal Employment Opportunity Commission. A fire department investigator looked into Hunter's claims and issued a report (the "EEO report") concluding that Lloyd, Hassan, and Fletcher discriminated against Hunter because of his race.

In 1998, Hunter filed a complaint in federal district court alleging claims of racial discrimination and harassment. The complaint incorporated the allegations and conclusions of the EEO report, and a copy of the report was attached as an exhibit to the complaint. Hunter later received permission to file an amended complaint. The amended complaint added Hunter's wife as a plaintiff and asserted claims under Title VII and 42 U.S.C.A. §§ 1981, 1983, and 1985(3) against various defendants, including Hassan, Fletcher, and Lloyd. The amended complaint referred to the investigation of Hunter's discrimination claims by the fire department's Equal Employment Office, but the complaint did not incorporate the findings of the EEO report, nor was the EEO report attached to the amended complaint.

After some defendants and claims were dismissed by stipulation and by the district court, the remaining defendants moved for sum-

mary judgment on the remaining claims. The Hunters' opposition to the summary judgment motion consisted of a legal memorandum that included a "verified statement of facts" sworn to by Andre Hunter, J.A. 230-33, but the Hunters otherwise presented no affidavits, depositions, or other evidence to support their claim that summary judgment was improper. The Hunters' memorandum referred to the EEO report and its finding that Andre Hunter had been discriminated against because of his race, but the report was not attached as an exhibit to the memorandum. Nothing in the memorandum indicated that the EEO report had been attached as an exhibit to the original complaint.

The district court granted summary judgment in favor of the defendants. In the summary judgment order, the district court noted the Hunters' reliance on the finding of discrimination contained in the EEO report. The court, however, did not consider that finding because the Hunters had "not provided the court with a copy of the report" and the court had "no way to gage how probative the report's findings are of discrimination." J.A. 297.

II.

The Hunters' sole argument on appeal centers on the district court's failure to consider the EEO report. The Hunters contend that because the EEO report was attached to the original complaint, it was part of the record before the district court, and the district court therefore should have considered it. The Hunters (now represented by new counsel) place much of the blame on their trial attorney, who failed to include the EEO report with his summary judgment opposition and failed to tell the district court that the report was attached to the original complaint. Despite this oversight by their previous attorney, the Hunters nonetheless insist that the court erred by failing to consider the report, which they contend sufficiently contradicted the evidence submitted by the defendants to render improper the grant of summary judgment.

The defendants, however, contend that the original complaint became inoperative once the amended complaint was filed. Because the EEO report was attached only to the original complaint, but not the amended complaint, the defendants argue that the report was no

longer a part of the record once the amended complaint was filed. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." (internal quotation marks omitted)). The defendants therefore contend that it was proper for the district court to make its summary judgment determination on the record before it, which did not include the EEO report.

We need not decide whether the district court had an obligation to locate and consider a document that appeared only as an attachment to a pleading that had been rendered of no legal effect by an amended pleading. Even assuming that the district court in this case should have located and considered the EEO report, we conclude, as we explain below, that the report presents no obstacle to the granting of summary judgment. *See, e.g.*, *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993) (explaining that this court "can affirm on any legal ground supported by the record and [is] not limited to the grounds relied on by the district court").

Only evidence that would be admissible at trial may be considered for summary judgment purposes. *See, e.g.*, *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."). Although we harbor some doubt, we will assume that the EEO report would be admissible at trial under the public records exception to the hearsay rule. *See* Fed. R. Evid. 803(8)(C) (declaring admissible "reports . . . of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness"). Nonetheless, we do not believe that the EEO report creates any genuine issues of material fact.

In *Goldberg v. B. Green & Co.*, 836 F.2d 845 (4th Cir. 1988), this court concluded that an EEOC report finding probable cause that age discrimination had occurred did not render the granting of summary judgment improper:

> [T]he Commission's findings are not sufficiently probative to create a genuine issue of material fact about [the employ-

er's] intent to discriminate on the basis of age. The Commission's report merely repeats facts which [the plaintiff] himself alleges elsewhere in this case, and then states in conclusory fashion that those facts reflect age discrimination. Such findings, standing alone, are not enough to salvage [the plaintiff's] claim.

*Id.* at 848.

The EEO report in this case is similarly deficient. The report largely repeats the allegations made by Hunter and asserts that "[t]he preponderance of the evidence supports the charge of racial discrimination" made by Hunter. J.A. 23. But there is nothing in the report to support the bare conclusion that the defendants' actions were because of Hunter's race. The report does not suggest that white employees in similar circumstances were treated more favorably than Hunter, nor does the report even suggest the existence of any direct evidence of discriminatory intent by the defendants. Instead, the report seems to simply assume that because Hunter is black, the actions taken against him must have been because of his race, without recounting any facts that could support such an inference. *Goldberg* makes clear that these sorts of unsupported conclusions are insufficient to stave off summary judgment.*

---

*At oral argument, counsel for the Hunters suggested that we should assume that a sufficient factual basis existed for the conclusions in the EEO report because the report states that the investigator interviewed the parties and reviewed "[w]ritten statements, records, and logs." J.A. 19. We disagree. The statements in the EEO report are no less conclusory simply because the report asserts that an investigation was performed; what makes the statements conclusory is the absence in the report of any facts to support the ultimate conclusion that Hunter was discriminated against because of his race. The EEO report is no more probative than is a plaintiff's conclusory affidavit stating that he has been illegally discriminated against, which this court consistently finds inadequate to create genuine issues of material fact. *See, e.g.*, *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998) (affirming grant of summary judgment because the plaintiff's "conclusory statements, without specific evidentiary support" were insufficient to create a genuine issue of fact); *see also Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th

### III.

As noted above, the Hunters' sole claim on appeal is that the district court erred by failing to consider the EEO report; they do not (and could not) contend that the grant of summary judgment was improper even without the EEO report. Because the EEO report fails to create any genuine issues of material fact, any error by the district court in failing to locate and consider the report is harmless. Accordingly, the decision of the district court is hereby affirmed.

*AFFIRMED*

Cir. 1996). Had the Hunters submitted to the district court, for example, an affidavit from the investigator that set out the facts upon which the investigator's conclusions were based, that affidavit might have been sufficient to prevent the granting of summary judgment. But, despite ample time for discovery, the Hunters submitted *no* evidence (other than Andre Hunter's "verified" facts included in the memorandum) in opposition to the summary judgment motion. It is far too late for the Hunters to suggest that we should assume that evidence exists to support their claims; it was the Hunters' obligation to locate and present any such evidence in a timely manner.