Jerome **GARY**, Plaintiff,

v.

**FREIGHTLINER**, Defendant

No. 3:02CV343–MCK.

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 8, 2005.

Romallus O. Murphy, Greensboro, NC, for Plaintiff.

Keith M. Weddington and Kristi Kessler Walters, Parker, Poe, Adams & Bernstein, Charlotte, NC, for Defendant.

## ORDER

VOORHEES, District Judge.

**THIS MATTER IS BEFORE THE COURT** for ruling on Defendant's Motion for Summary Judgment (doc. 20); the Memorandum in Support (doc. 22); Plaintiff's Response (doc. 25) and the Reply (doc. 28).[1]

### I. Factual and procedural background

Plaintiff Jerome Gary filed this complaint alleging that his former employer, Defendant Freightliner, wrongfully discharged and retaliated against him because of his race and age in violation of Title VII of the Civil Rights Act of 1964, as amended, Section 1981 of the Civil Rights Act of 1866, and the Age Discrimination in Employment Act ("ADEA"). Regarding the ADEA claim, in his Response to the Motion for Summary Judgment, Plaintiff states that he "abandon's [sic] this claim" (doc. 25, p. 6). Accordingly, only the wrongful discharge and retaliation claims will be addressed in this Order. For the following reasons, the motion for summary judgment is granted.

Defendant hired Plaintiff in 1991 to work as a painter in Defendant's Mount Holly truck manufacturing plant. Plaintiff is an African–American male. Defendant terminated Plaintiff on April 3, 2001, for insubordination and failure to comply with a direct order.

During his employment with Defendant, Plaintiff received a number of disciplinary warnings. In addition to warnings received for absenteeism and tardiness, Plaintiff was suspended in 1993 for insubordination for failure to obey a direct order. At that time, Plaintiff was warned that future similar incidents would result in progressive discipline to include termination.

At the time of Plaintiff's employment, employees at the Mount Holly plant were represented by the United Auto Workers Union under a collective bargaining agreement ("CBA"). Under the CBA, Plaintiff was one of several Freightliner employees elected by the employees to serve as a union representative. As a union representative, Plaintiff investigated and filed grievances on behalf of his fellow employees. It is undisputed that, under the terms of the CBA and the policies at Freightliner, failure to follow a direct order from a supervisor (unless to do so would be unsafe or illegal) is insubordination which may lead to termination.

---

1. This case was recently re-assigned to this Court following the death of the presiding judge.

Plaintiff was a concededly aggressive representative who was criticized by the UAW's International Representative for burdening Freightliner's grievance procedure by filing multiple grievances regarding the same complaint or incident. For example, Plaintiff filed 49 grievances regarding employee Doris McGill whose request for the hiring of an additional employee to help her do her job was refused. In over 49 grievances filed regarding this one incident, Plaintiff claimed that McGill was refused the additional assistance because she was black. Plaintiff refused to quit filing multiple grievances despite the UAW directing him to stop. Accordingly, to deal with the burden on the grievance system caused by Plaintiff's unwillingness to follow the directive of his own Union, the UAW and Freightliner were forced to devise a procedure whereby they would select and address a single grievance which was representative of any set of multiple grievances filed by Plaintiff.

On March 26, 2001, Plaintiff went to talk with several employees in the aisle way of Supervisor Darrell Reid's area. Mr. Reid is African–American. After Plaintiff had been in the aisle way for some time, Mr. Reid told him that he was disrupting the line because employees kept leaving their stations to talk with Plaintiff. Mr. Reid asked Plaintiff to leave. Plaintiff refused, indicating that he was conducting union business and would remain in Mr. Reid's area. Following further discussions with Plaintiff, Mr. Reid gave him a direct order to leave. Plaintiff refused. Plaintiff argued with Mr. Reid and demanded that the shift manager, David Duty, (who is white) be called to discuss the situation. When Mr. Duty arrived, Plaintiff admitted that he had been given a direct order by Mr. Reid to leave and refused. Plaintiff then demanded to know whether the order for him to leave constituted a "unilateral change" in standard procedure whereby a union representative would not be allowed to stand in the aisle way and take notes after interviewing an employee. To diffuse the situation, Mr. Duty instructed Plaintiff to go to the union office. Plaintiff refused, telling Mr. Duty that "Duty, you are nobody's daddy so don't tell me to go to the union office like some kid." (Plaintiff Dep., Ex. 20). Mr. Duty instructed Mr. Reid to give Plaintiff another direct order to leave the aisle way. Mr. Reid gave Plaintiff another direct order. Plaintiff refused and was suspended following investigation.

The investigation involved the Human Resources Manager, the Labor Relations Manager, and the Personnel Specialist. Plaintiff was represented by the Vice President of the local UAW and another union committee person. After the investigation, Plaintiff was terminated for insubordination. Plaintiff appealed and the Union filed a grievance on his behalf to contest his termination which was denied. Plaintiff's grievance was ultimately referred to arbitration. Neither Plaintiff nor the Union mentioned race or age discrimination during the grievance and arbitration procedures. Instead, they argued that Plaintiff was terminated for participating in Union activity. The arbitrator ruled in favor of Defendant, finding that Plaintiff disobeyed a direct order and had a history of disobeying direct orders in the past. Plaintiff appealed the arbitrator's decision to the Regional Director of the NLRB who upheld the arbitrator's decision. Plaintiff appealed that decision to the NLRB's Office of Appeals. That appeal was also denied and the NLRB charge brought by the Union was ultimately dismissed.

Following his unsuccessful arbitration of the matter, Plaintiff filed an EEOC charge against Defendant. In the EEOC charge, Plaintiff claimed for the first time that he was discriminated against on the basis of

race and age. Plaintiff then filed an EEOC charge against the *Union*, claiming that it discriminated against him on the basis of race and age in failing to represent him properly during the grievance and arbitration process. Both charges were dismissed by the EEOC. Plaintiff then asked the EEOC to reconsider its dismissal of the charge against Defendant. The EEOC responded that no evidence was overlooked nor misinterpreted in evaluating the charge. Following the issuance of a "right-to-sue" letter from the Equal Employment Opportunity Commission, Plaintiff filed this action against Freightliner, alleging discrimination on the basis of race and age.

For the following reasons, this Court finds that summary judgment should be granted in favor of Defendant.

## II. Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party bears the initial burden of identifying the materials which demonstrate the absence of a genuine issue of material fact, but the moving party need not negate the adverse party's claim. *Celotex Corp v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is no genuine issue of material fact if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which the party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. 2548. In evaluating

whether a dispute about a material fact is genuine, the court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505. Although the court must view the evidence in the light most favorable to the nonmoving party, Rule 56 does not relieve the non-movant of the responsibility to rebut the motion and the burden of producing evidence that would support a jury verdict. *Id.* at 256, 106 S.Ct. 2505.

■ Summary judgment is not inappropriate in discrimination cases simply because they involve issues of intent and motive. *Edwards v. Norfolk S. Corp.* 872 F.Supp. 277, 280 (W.D.Va.), *aff'd.*, 42 F.3d 1385, 1994 WL 681097 (4th Cir.1994).

A plaintiff when faced with a motion for summary judgment cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie case and respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact. Even where a prima facie case has been established but the defendant has rebutted with a proffer of legitimate, non-discriminatory reasons for the [adverse employment action] a genuine issue of material fact is not automatically presented.

*McDaniel v. Mead Corp.*, 622 F.Supp. 351, 355 (W.D.Va.1985), *aff'd.* 818 F.2d 861 (4th Cir.1987) (*quoting Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1391 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983)). The Fourth Cir-

cuit has clearly held that, at a minimum, proof of pretext is required to survive a defendant's motion for summary judgment. *Mitchell v. Data General Corp.* 12 F.3d 1310, 1316 (4th Cir.1993).

## III. Analysis

■ Plaintiff alleges claims of wrongful discharge and retaliation on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended, and Section 1981 of the Civil Rights Act of 1866. Title VII and Section 1981 claims are analyzed under the same framework. *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

To support his claim of discrimination, Plaintiff alleges that, in discharging him, Defendant treated him more harshly than white employees who committed violations similar to Plaintiff's. Plaintiff argues that this constitutes discriminatory disparate treatment based on race. Plaintiff further argues that Defendant retaliated against him by terminating him for filing a grievance alleging that another employee had been discriminated against on the basis of race and sex.

### A. Disparate treatment

■ Where an employee complains that he was disciplined more harshly than other employees, in order to establish a *prima facie* case of discrimination, the employee must show: (1) that he is a member of a protected class; (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees. *Cook v. CSX Transportation Corp.,* 988 F.2d 507, 511 (4th Cir.1993) (*citing Moore v. City of Charlotte,* 754 F.2d 1100, 1105–06 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985)).

■ To show that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, a plaintiff must not only prove that others similarly violated the employer's rules, but also that the violation or the acts of the employees in question were of "comparable seriousness." *McDonald v. Santa Fe Trail Transn. Co.,* 427 U.S. 273, 283, 96 S.Ct. 2574, 49 L.Ed.2d 493 n. 1 (1976); *Cook v. CSX Transportation Corp.,* 988 F.2d at 511; *Moore v. City of Charlotte,* 754 F.2d at 1107. In addition, the plaintiff bears the burden of establishing that the other employees were "similarly situated." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ To survive summary judgment, the Plaintiff must make out this *prima facie* case. Then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the treatment in question. If the employer does so, the burden shifts back to the employee who must "demonstrate that the employer's reasons are not true but instead serve as a pretext for discrimination." *See Cook, supra,* 988 F.2d at 511. For the following reasons, the undersigned finds that Plaintiff cannot make out a *prima facie* case of disparate treatment.

Defendant avers that Plaintiff was fired for refusing to obey a direct order. Plaintiff does not dispute he refused a direct order nor does he dispute that such action constitutes grounds for dismissal.

Instead, in his Response, Plaintiff characterizes his offense as a "failure to follow directions or instructions," rather than failure to obey a direct order and avers that white employees who failed to follow directions or instructions were not dis-

charged (doc. 25, p. 4). It is undisputed that, in Defendant's discipline procedures, the failure to follow a supervisor's instructions regarding a job task is a different offense than the failure to obey a direct order (doc. 25, Exs. 16 –21). Moreover, Plaintiff offers no evidence that the failure to follow directions or instructions is of comparable seriousness to a failure to obey the direct order of a supervisor. Plaintiff's misleading characterization is not accepted by this Court. It is clear that his offense was the refusal to obey a direct order, not a failure to follow instructions.

In support of his flawed argument, Plaintiff attaches an assortment of unauthenticated and unsworn documents with no explanation or guidance as to any document's relevance to the case. Plaintiff also attaches random pages of deposition excerpts, again with no explanation or guidance as to the excerpts' relevance to the case. Defendant objects to this Court's consideration of the documents because they are unauthenticated and unsworn. Defendant objects to the deposition excerpts because they contain multiple levels of hearsay (doc. 28, p. 2–5). Plaintiff did not respond to Defendant's objections, nor has Plaintiff attempted to proffer appropriate documents to replace these exhibits.

■ Rule 56 of the Federal Rules of Civil Procedure requires that, to be admissible at summary judgment, supporting documentary evidence must be authenticated by, and attached to, a sworn affidavit. *See* Fed. R. Civ. Pro. 56, *Orsi v. Kirkwood,* 999 F.2d 86, 91 (4th Cir.1993). Moreover, it is well-settled that hearsay evidence, which is inadmissible at trial cannot be considered on a motion for summary judgment. *See, e.g., Hunter v. Prince George's County,* 36 Fed.Appx. 103, 2002 WL 1173545 (4th Cir.2002) *quoting Maryland Highways Contractors Association v. Maryland,* 933 F.2d 1246 (4th Cir.

1991). Applying the caselaw, these documents and deposition excerpts should not be considered by the Court on the motion for summary judgment.

■ Even if they are considered by the Court, Plaintiff cannot establish that he was similarly situated to other employees. It is not clear from Plaintiff's brief what the Plaintiff claims the documents show. The Court, after sifting through the documents and deposition excerpts, surmises that Plaintiff is attempting to compare himself to ten presumably white employees: Kevin Southers, Randy Carver, Terry Cole, Jeffrey Thrift, Clark Riddle, Denise Toney, Greg Johnson, Bernard Dean, Lee Lineberry, and Anita Robinson. For the following reasons, none of these ten employees are similarly situated to Plaintiff to establish disparate treatment because there is no evidence that any of them refused to obey a direct order and were disciplined less harshly than Plaintiff.

### Greg Johnson

According to Plaintiff's submissions, Mr. Johnson was initially suspended and terminated for insubordination for pushing a supervisor (doc. 28, Ex. 3). Mr. Johnson filed a grievance contesting the suspension and, because none of the witnesses could corroborate that Mr. Johnson pushed the supervisor, Defendant settled the grievance and reinstated Mr. Johnson after a suspension without pay. *Id.* There is no evidence that Mr. Johnson refused to obey a direct order. Accordingly, for purposes of showing disparate treatment, this offense is not similar to that of Defendant.

### Terry Cole

Terry Cole left the Defendant's facility during working hours and without clocking out or clocking back in upon his return (doc. 25, Ex.1, Att. C). Mr. Cole was then disciplined for claiming pay for hours he

did not work. *Id.* There is no evidence that Mr. Cole refused to obey a direct order. Accordingly, for purposes of showing disparate treatment, this offense is not similar to that of Defendant.

### Randy Carver

Mr. Carver was suspended for using vulgar language with a supervisor (doc. 25, Ex.1, Att.B). There is no evidence that Mr. Carver refused to obey a direct order. Accordingly, for purposes of showing disparate treatment, this offense is not similar to that of Defendant.

### Denise Toney

Ms. Toney was suspended pending investigation of a failure to obey a direct order to leave a work area (doc. 25, Exs.10, 18). Due to Freightliner's loss of faith in the credibility of the supervisor involved,[2] Defendant determined that no such order had been issued and reinstated Ms. Toney without further discipline (doc. 28, Ex. 3).

In the instant case both Mr. Duty and Mr. Reid corroborate that Plaintiff was given a direct order and there is no evidence that either of these supervisors lacks credibility. Accordingly, for purposes of showing disparate treatment, Ms. Toney's situation is not similar to that of Defendant.

### Kevin Southers

The confusing documentation on Mr. Southers contains a report of him cursing at a fellow employee and two later-filed grievance reports filed by Southers which do not appear to be related to the cursing (doc. 25, Exs.A, C). In the two grievances, Mr. Southers complains that he should not have been given direct orders by management during his duties as a union committee-person because such conduct violated the "Recognition" and "Representation" articles of the CBA. There is no evidence in the documentation that Mr. Southers did not obey these orders, if they were given, and no information regarding the outcome of his grievance. Moreover, the incidents are over eight years old and involve different supervisors. Accordingly, for purposes of showing disparate treatment, Mr. Southers' situation is not similar to that of Defendant.

### Clark Riddle

As with Mr. Southers, Plaintiff's submission regarding Mr. Riddle merely shows that he was *given* a direct order, not that he disobeyed a direct order and was subsequently disciplined less harshly (doc. 28, Ex. 4). Accordingly, for purposes of showing disparate treatment, Mr. Riddle's situation is not similar to that of Defendant.

### Bernard Dean

According to Plaintiff's submissions, Mr. Dean was suspended for failure to follow his supervisor's instructions regarding a specific job task, not for refusing the direct order of a supervisor (doc. 28, Ex. 15). Accordingly, for purposes of showing disparate treatment, Mr. Dean's situation is not similar to that of Defendant.

### Lee Lineberry

According to Plaintiff's submissions, Mr. Lineberry was disciplined for being verbally abusive towards a supervisor and for failure to clock out upon leaving the facility, not for refusing the direct order of a supervisor (doc. 28, Ex. 19). Accordingly, for purposes of showing disparate treatment, Mr. Lineberry's situation is not similar to that of Defendant.

---

**2.** Upon investigation, Ms. Toney said that she was never given a direct order and that the supervisor pushed her. No witnesses corroborated that she had been given a direct order. After learning that this particular supervisor had been fired from his previous employment for similar inappropriate behavior, Defendant doubted the supervisor's credibility.

## Jeffrey Thrift

According to Plaintiff's submissions, Mr. Thrift was disciplined for failure to follow a supervisor's instructions regarding a job task and for disrespectful conduct towards a supervisor, not for failure to obey a direct order (doc. 28, Ex. 17). Accordingly, for purposes of showing disparate treatment, Mr. Thrift's situation is not similar to that of Defendant.

## Anita Robinson

According to Plaintiff's submissions, Ms. Robinson was apparently disciplined for failure to obey a direct order and was terminated. As this evidence, like all of Plaintiff's evidence, was submitted with no guidance or explanation, it is unclear what the Court is to glean from this submission. On its face, because Ms. Robinson was terminated, this evidence weighs against Plaintiff's argument.

For the foregoing reasons, Plaintiff has not shown that other employees similarly violated the employer's rules, nor has he shown that the violation or the acts of the employees in question were of "comparable seriousness." *McDonald v. Santa Fe Trail Transn. Co.*, 427 U.S. 273, 283, 96 S.Ct. 2574, 49 L.Ed.2d 493 n. 1 (1976); *Cook v. CSX Transportation Corp.*, 988 F.2d at 511; *Moore v. City of Charlotte*, 754 F.2d at 1107. Applying the caselaw, Plaintiff cannot make out a *prima facie* case of disparate treatment. Accordingly, Defendant's motion for summary judgment on this claim must be granted.

## B. Retaliation

Plaintiff alleges that Defendant retaliated against him for filing a grievance for fellow employee, Doris McGill. The grievance alleged that Ms. McGill had been discriminated against on the basis of race and sex because she had requested extra help on her line but did not receive it.

■ To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) Plaintiff engaged in protected activity; (2) the employer took adverse action against him; and (3) a causal connection existed between the protected activity and the adverse action. *See Carter v. Ball*, 33 F.3d 450 (4th Cir.1994). Defendant argues that Plaintiff cannot satisfy the third prong, that a causal connection existed between the protected activity and the adverse action, and thus cannot make out a *prima facie* case.

■ In response, Plaintiff argues that this Court can infer a causal connection from temporal proximity, noting that he was terminated several weeks after filing the grievance alleging discrimination. Close temporal proximity between the first elements has been held to satisfy the third element. *See Carter v. Ball*, 33 F.3d 450 (4th Cir.1994) (five months temporal proximity satisfies third prong of *prima facie* case); *Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (four months). Accordingly, Plaintiff has stated a *prima facie* case for retaliation.

■ While Plaintiff has made out his *prima facie* case, because Freightliner has articulated a legitimate, non-discriminatory reason for the termination, Plaintiff cannot survive summary judgment unless he can show that this reason is pretextual.[3] For the following reasons, Plaintiff cannot meet his burden of showing that the stated explanation is a pretext for discrimination.

---

3. To survive summary judgment, the Plaintiff must make out this *prima facie* case. Then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the treatment in question. If the employer does so, the burden shifts back to the employee who must "demonstrate that the employer's reasons are not true but instead serve as a pretext for discrimination." *See Cook, supra*, 988 F.2d at 511.

First, there is no evidence that Plaintiff was terminated for filing this grievance rather than for Plaintiff's admitted refusal to obey a direct order. Second, there is no evidence of anyone being terminated for filing a grievance which alleged discrimination. Third, there is evidence of at least one other union representative who filed a grievance which alleged discrimination and who was not disciplined in any way (doc. 22, Ex. 1).

Plaintiff's arguments in response are unsupported by the evidence and unpersuasive. Plaintiff relies upon his submissions regarding comparator white employees as evidence that he was the only person discharged for committing the "same offense" (doc. 25, p. 4). Yet, as discussed above, none of Plaintiff's comparators committed the "same offense." Moreover, Plaintiff argues that the explanation is pretextual because Defendant relies upon Plaintiff's 1993 discipline report as "evidence in support of its action" (doc. 25, p. 4). Plaintiff avers it is a violation of the CBA to use a disciplinary report which is more than a year old in progressive disciplinary procedures. Yet it is clear that Defendant cited the incident to establish that Plaintiff was well aware that refusal to obey a direct order was grounds for termination because he had been told this after the 1993 incident. Defendant did not use the 1993 incident in progressive discipline to terminate Plaintiff.

Applying the caselaw, Plaintiff has not rebutted Defendant's legitimate explanation for terminating Plaintiff's employment, nor has Plaintiff proven that Defendant's explanation is a pretext for discrimination. Defendant's motion for summary judgment must be granted on this claim.

## IV. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** Defen-dant's motion for summary judgment (doc. 20) is **GRANTED.**