**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SOUTHERN WALK AT BROADLANDS
HOMEOWNER'S ASSOCIATION, INC.,
    *Plaintiff-Appellant,*

  v.

OPENBAND AT BROADLANDS, LLC,
    *Defendant-Appellee.*

No. 12-1331

SOUTHERN WALK AT BROADLANDS
HOMEOWNER'S ASSOCIATION, INC.,
    *Plaintiff-Appellee,*

  v.

OPENBAND AT BROADLANDS, LLC,
    *Defendant-Appellant.*

No. 12-2083

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:11-cv-00517-GBL-TCB)

Argued: January 29, 2013

Decided: April 5, 2013

Before WILKINSON, MOTZ, and THACKER,
Circuit Judges.

No. 12-1331 affirmed in part and vacated and remanded in part; No. 12-2083 affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Wilkinson and Judge Thacker joined.

---

**COUNSEL**

**ARGUED:** Kurt Charles Rommel, MILES & STOCKBRIDGE, McLean, Virginia, for Appellant/Cross-Appellee. Sanford M. Saunders, Jr., GREENBERG TRAURIG, LLP, Washington, D.C., for Appellee/Cross-Appellant. **ON BRIEF:** Harvey B. Cohen, Christopher E. Brown, MILES & STOCKBRIDGE, McLean, Virginia; Constance J. Miller, CONSTANCE J. MILLER, ESQ., McLean, Virginia, for Appellant/Cross-Appellee. Laura Metcoff Klaus, GREENBERG TRAURIG, LLP, Washington, D.C., for Appellee/Cross-Appellant.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Southern Walk at Broadlands Homeowners Association brought this action seeking a declaratory judgment against OpenBand at Broadlands, the corporation with which it had contracted in 2001 for wire-based video services. Southern Walk alleges that the 2007 Exclusivity Order issued by the Federal Communications Commission renders "null and void" OpenBand's exclusive rights under the 2001 contracts to provide such wire-based video services to Southern Walk homeowners. In these cross appeals, Southern Walk challenges the district court's dismissal of its action with prejudice, and OpenBand challenges the court's refusal to award it attorneys' fees. For the reasons that follow, we affirm the judgment of the district court to the extent it held that Southern Walk

failed to allege facts supporting standing in this case, but vacate that judgment to the extent it dismissed the case with prejudice, and remand with instructions to dismiss without prejudice. We affirm the court's denial of attorneys' fees to OpenBand.

## I.

### A.

Southern Walk at Broadlands (the "community") is a planned residential development consisting of over 1100 individually owned properties. In 2001, the developer of the community, Broadlands Associates, incorporated Southern Walk at Broadlands Homeowners Association, Inc. ("Southern Walk") as a Virginia non-stock corporation. Southern Walk's articles of incorporation state that its purposes are to "assure maintenance, preservation and architectural control" of, and "provide, or cause to provide for, the installation and maintenance of an exclusive private utility system" within, the community.

In November 2001, shortly after being incorporated, Southern Walk executed a Telecommunications Services Agreement ("TSA") with OpenBand for the provision of certain "platform" telephone, internet, and video services for the community's member households.[1] The TSA requires that each household in the community purchase platform services from OpenBand, regardless of whether the household actually uses the services. Households pay for OpenBand's services through their homeowners' association assessments. If any household defaults on its assessments, Southern Walk must pay OpenBand for the services. The TSA allows individual

---

[1]The TSA defines "platform" services as "Telephone Services, Internet Services and Video Services for which residents pay as a part of their required [homeowners' association] fee." Platform services are distinct from premium services, which are provided "on an elective basis."

households to obtain additional (but not replacement) platform services from alternative providers. However, Southern Walk itself may "not engage any other provider of Platform Services" for the community.

Also in November 2001, Broadlands Communications—a Broadlands Associates subsidiary—conveyed to OpenBand an "Easement[ ] for the Exclusive Provision of Telecommunications Services for Southern Walk at Broadlands." This perpetual easement grants OpenBand "the exclusive right to Operate Utilities on, under and across [the community] such that, no other person or entity other than [OpenBand] . . . shall be entitled to Operate any Utilities on, under or across [the community] without the written consent of [OpenBand]." "Utilities" include both above- and below-ground infrastructure "necessary for the collection, provision, distribution and transmission of video, telephonic, [and] internet . . . services."

As further protection for OpenBand's exclusive right, Broadlands Communications, Broadlands Associates, and Broadlands Association, Inc., all covenanted that "they shall not grant any easement other than [this] Easement to Operate any Utilities on, under or across" the community. Southern Walk itself covenanted that it "shall not take any action inconsistent with the terms of this Easement Deed and the rights herein granted." OpenBand, however, retained the ability to transfer or assign its rights and grant sub-easements. Soon thereafter, OpenBand began providing platform services to Southern Walk's member households pursuant to the TSA and its easement; OpenBand remains the only provider of platform services for Southern Walk's member households today.

B.

In 2007, nearly seven years after the execution of the TSA and the easement, the FCC issued the Exclusivity Order. *See In the Matter of Exclusive Service Contracts for Provision of*

*Video Services in Multiple Dwelling Units and Other Real Estate Developments*, 22 FCC Rcd. 20235 (2007). The Exclusivity Order addresses "the need to regulate contracts containing clauses granting one multichannel video programming distributor . . . exclusive access for the provision of video services ('exclusivity clauses') to multiple dwelling units . . . and other real estate developments." *Id.* ¶ 1.

Of particular concern to the FCC were contractual clauses between multiple dwelling unit or real estate development owners and wire-based cable television providers that "prohibit any other [provider] from any access whatsoever to the premises of the [multiple dwelling unit] building or real estate development." *Id.* ¶ 1 n.2. The FCC found that "contractual agreements granting such exclusivity . . . harm competition and broadband deployment and that any benefits to consumers are outweighed by the harms of such clauses." *Id.* at ¶ 1. Lack of choice for consumers, stagnation in innovation and services due to lack of competition, and the inefficient use of existing telecommunications infrastructure topped the list of harms the FCC identified. *Id.* ¶¶ 17-23.

As a result of its findings, and pursuant to its authority under 47 U.S.C. § 548, the FCC ordered that

> no cable operator . . . shall enforce or execute any provision in a contract that grants it the exclusive right to provide any video programming service (alone or in combination with other services) to a [multiple dwelling unit]. Any such exclusivity clause shall be null and void.

*Id.* ¶ 31 (codified at 47 C.F.R. § 76.2000). For the purposes of the order, a "multiple dwelling unit" includes "centrally managed residential real estate developments." *Id.* ¶ 7. The District of Columbia Circuit upheld the Exclusivity Order in 2009. *See Nat'l Cable & Telecomm. Ass'n v. FCC*, 567 F.3d 659, 661 (D.C. Cir. 2009).

After publication of the Exclusivity Order, Southern Walk began exploring opportunities "to allow other Loudoun County franchisees of cable [television] to have access to the Southern Walk at Broadlands community" and thereby provide its member households expanded choices in wire-based video services. On October 5, 2010, Southern Walk wrote a letter to OpenBand stating its belief that the TSA and easements created an "overall scheme" of wire-based video service exclusivity that violates the Exclusivity Order. Southern Walk requested modifications to the terms of both the TSA and the easements, but OpenBand's representatives insisted that OpenBand would enforce both "as is."

Southern Walk then attempted to negotiate with competing wire-based video service providers for its member households. These providers, however, refused their services, explaining that provisions in the TSA and easement prevented their access to the community. Verizon explained that it could not provide FiOS services to the community "because of [Southern Walk's] exclusive agreement & access [easement] with OpenBand Communications." Similarly, Comcast informed Southern Walk that it could not provide wire-based video services to its member households "because of Open-Band's exclusive easements."

## C.

On May 13, 2011, Southern Walk filed this action against OpenBand seeking a declaration that the exclusivity provisions in the TSA, easement, and other ancillary agreements are illegal and unenforceable under the Exclusivity Order and state law. A few months later, Southern Walk amended the complaint to allege that the TSA and easement combine to create an "overall scheme" giving "OpenBand exclusive access to the [community] and have had the effect of actually precluding any other wire-based video provider from gaining access to the [community]," in violation of the Exclusivity Order.

OpenBand moved to dismiss the amended complaint. The district court granted the motion and dismissed the case with prejudice. The court held that Southern Walk lacked standing to bring any federal claim, and that, even if it had standing, the Exclusivity Order did not support the declaratory relief sought. The court also declined to exercise supplemental jurisdiction over the state law claims, and denied Southern Walk's motion for leave to amend its complaint a second time.

OpenBand later moved for attorneys' fees pursuant to the fee-shifting provision in the TSA. While that motion was pending, Southern Walk timely appealed the dismissal of its action for declaratory judgment under the Exclusivity Order. The district court subsequently denied OpenBand's motion for attorneys' fees, and OpenBand timely appealed that denial. We consolidated the two cases on appeal.

II.

We review a district court's dismissal for lack of standing de novo. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). Plaintiffs bear the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

"When standing is challenged on the pleadings, we accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013). However, we need not accept factual allegations "that constitute nothing more than 'legal conclusions' or 'naked assertions.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Moreover, we are "powerless to create [our] own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).

When addressing the appropriateness of dismissal for lack of standing, we consider exhibits attached to the complaint in

addition to the complaint itself. Fed. R. Civ. P. 10(c); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached [to the complaint,] . . . the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

An organization like Southern Walk can assert standing either in its own right or as a representative of its members. *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991). Southern Walk claims both types of standing here, and we consider each in turn.

A.

An organization claiming standing in its own right must adequately allege that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Southern Walk first argues that it has standing in its own right because it is a party to many of the contracts that together set forth OpenBand's exclusivity rights. Although a party to a contract containing allegedly illegal provisions often will have standing to challenge that contract, simply being a party to the contract does not alone establish Article III standing. An organizational plaintiff must still demonstrate *personal* harm both traceable to the challenged provisions and redressable by a federal court.

Southern Walk contends that it is harmed personally by the TSA requirement that it pay for all platform services from OpenBand for which its member households fail to pay. How-

ever, any economic injury to Southern Walk due to this provision of the TSA is non-redressable.[2] This is so because regardless of the challenged exclusivity arrangement, it is the bulk billing provisions in the TSA that require this payment. The "bulk billing arrangement" is a legally permissible arrangement "in which one [video service provider] provides video service to every resident of a[ ] [multiple dwelling unit development], usually at a significant discount from the retail rate that each resident would pay if he or she contracted with the [provider] individually." *In the Matter of Exclusive Service Contracts for Provision of Video Services in Multiple Dwelling Units and Other Real Estate Developments*, 25 FCC Rcd. 2460, 2461 (2010).

Southern Walk does not challenge the bulk billing arrangement and so it would be unaffected by any favorable declaration nullifying OpenBand's contractual exclusivity rights. In effect, Southern Walk, as it admitted at oral argument, must pay for OpenBand's services *regardless* of the outcome of this action. Therefore, its asserted injury, though concrete and actual, is simply not redressable in this action. *See Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor*, 995 F.2d 510, 513 (4th Cir. 1993) ("By itself, a declaratory judgment cannot be the redress that satisfies the third standing prong. Rather, plaintiffs must identify some further concrete relief that will likely result from the declaratory judgment.").

Further, Southern Walk fails to allege that any other effects of the exclusivity arrangement amount to a *personal harm* to it. Southern Walk does *not* allege that it is a consumer of OpenBand's wire-based video services. *Compare Lansdowne*

---

[2]Although we characterize the issue as one of redressability, Southern Walk also fails to demonstrate traceability for the same reasons. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005) ("In this case, like many, redressability and traceability overlap as two sides of a causation coin." (internal quotation marks omitted)).

*on the Potomac Homeowners Ass'n v. Openband at Lansdowne, LLC*, No. 12-1925, slip op. at 10 (April 5, 2013). Nor does Southern Walk allege that it intends to purchase such wire-based video services from OpenBand's competitors for its own use but that the exclusivity arrangement prevents it from doing so. In short, Southern Walk does not allege any economic injury to itself caused by the exclusivity arrangement. Any consumer harm the arrangement causes injures Southern Walk's member households—not Southern Walk in its own right.

Alternatively, Southern Walk maintains that it has standing in its own right because the exclusivity arrangement "interferes with [its] ability to obtain cable-based services for its constituents." This argument fares no better. In its articles of incorporation, Southern Walk states that one of its purposes is "to provide, or cause to provide for, the installation and maintenance of an exclusive private utility system within the Property," and, for this purpose, Southern Walk has the authority to "[p]romote and provide for the . . . general welfare of" its member households. But Southern Walk does not allege in its amended complaint that the exclusivity arrangement frustrates its stated organizational purpose.[3] And, even if it had, an injury to organizational purpose, without more, does not provide a basis for standing. *See Sierra Club v. Morton*, 405 U.S. 727, 739 (1972); *Md. Highways Contractors Ass'n*, 933 F.2d at 1250-51; *cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (finding standing when "broadly alleged" impairment of an organization's ability to advance its purposes combined with an alleged "consequent drain on the organization's resources").

---

[3]We note that in its amended complaint, Southern Walk also overstates its corporate purpose by alleging that its "sole purpose is to administer the [TSA] . . . for the benefit of the homeowners in the community." The plain language of its articles of incorporation simply does not reflect this exaggeration.

For these reasons, we agree with the district court that Southern Walk failed to plead facts sufficient to support standing in its own right.

## B.

Because Southern Walk alleges no injury to itself in its own right, it "can establish standing only as [a] representative[ ] of [its] members who have been injured in fact, and thus could have brought suit in their own right." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976).

To plead representational standing, an organization must allege that "(1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit." *Md. Highways Contractors Ass'n*, 933 F.2d at 1251 (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

The Supreme Court has clarified that to show that its members would have standing, an organization must "make specific allegations establishing that at least one *identified member* had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added). Southern Walk has failed to identify a single *specific member* injured by the exclusivity arrangement. This failure to follow the requirement articulated in *Summers* would seem to doom its representational standing claim. Southern Walk, however, argues that the *Summers* identification requirement does not apply here for two reasons.

First, Southern Walk contends that the *Summers* directive should be limited to its facts, applying only to large, diverse advocacy groups with voluntary membership, like national environmental organizations. In effect, Southern Walk asks us to create an exception to *Summers* for smaller, presumably

more homogenous, groups with mandatory membership, like homeowners' associations. However logical this distinction may be, the plain language of *Summers* admits no such exception. 555 U.S. at 498-99. And although we recognize that applying *Summers* to all representational standing claims places a burden on organizational plaintiffs, such a burden accords with our obligation under Article III to ensure that "'the plaintiff is the proper party to bring [the] suit.'" *See White Tail Park*, 413 F.3d at 460 (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Further, any such burden is surely insubstantial in cases like this one, "whe[re] so many thousands are alleged to have been harmed." *See Summers*, 555 U.S. at 499. Thus, we refuse to adopt the exception to *Summers* that Southern Walk advocates.

Alternatively, Southern Walk argues on appeal that it has satisfied *Summers*' requirement by alleging that "[e]ach of Southern Walk's members" is harmed by the exclusivity arrangement. *Summers* does retain a limited exception to its identification requirement for cases in which all members of an organization are harmed. *Summers*, 555 U.S. at 499 (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958)). But Southern Walk has failed to allege such a case. For, contrary to Southern Walk's appellate argument, its amended complaint *does not allege* that *all* of its members were harmed. The amended complaint alleges only that "Southern Walk [which the amended complaint defines, as we have, as the "Southern Walk Homeowners Association, Inc."] is being harmed." Thus, Southern Walk's complaint only alleges that it, the homeowners' association, is being harmed —not that *any*, let alone *all*, of its individual members are.

It is well-established that parties cannot amend their complaints through briefing or oral advocacy. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *accord E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings

and cannot be considered on a Rule 12(b)(6) motion."). Moreover, contrary to Southern Walk's contention, an allegation that "Southern Walk [the homeowners' association] is being harmed" simply does not equate to an allegation that *each* or *all* of Southern Walk's members are "being harmed" as well. Such an interpretation of the amended complaint would blur the important distinctions between standing based on an organization's injury in its own right and representational standing based on injury to its members.

Furthermore, although it is possible that each Southern Walk member is "being harmed" by the exclusivity arrangement, Southern Walk's terse allegation of its injury—without specific mention of any individual member's injury—surely "'stops short of the line between possibility and plausibility,'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), for the purposes of the limited "all members" exception to the *Summers* identification requirement. For the allegations in the complaint provide no indication that *every* Southern Walk member household actually desires alternative wire-based video services. Accordingly, Southern Walk has failed to allege representational standing.

## C.

Although we conclude that Southern Walk failed to plead facts adequate to establish either individual or representational standing, we cannot affirm the district court's ultimate dismissal of Southern Walk's amended complaint with prejudice.

A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits. *See* Fed. R. Civ. P. 41(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998); *Interstate Petroleum Corp. v. Morgan*,

249 F.3d 215, 222 (4th Cir. 2001) (en banc); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims."); *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render. . . . 'No jurisdiction' and 'with prejudice' are mutually exclusive." (internal citation omitted)).

Accordingly, we affirm the judgment of the district court to the extent that it dismisses Southern Walk's amended complaint, but we vacate the judgment to the extent that the dismissal was with prejudice, and remand with instructions that the case be dismissed without prejudice.[4]

## III.

Having resolved Southern Walk's appeal, we turn to Open-Band's appeal challenging the district court's refusal to grant it attorneys' fees. Typically, we review a grant or denial of a motion for attorneys' fees for abuse of discretion. *See Johnson v. City of Aiken*, 278 F.3d 333, 336 (4th Cir. 2002). However, because OpenBand moved for attorneys' fees pursuant to a fee-shifting provision in the TSA, and the district court denied the motion on contract interpretation grounds, we review the district court's denial de novo. *See Johannssen v. Dist. No. 1-Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 178 (4th Cir. 2002), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008).

---

[4]We note that the district court made alternative holdings on the merits assertedly supporting its dismissal with prejudice. Given the court's lack of jurisdiction over the case, any alternative holdings based on consideration of and conclusions on the merits were beyond the power of the district court. *Steel Co.*, 523 U.S. at 94.

The TSA provides that "[t]he prevailing Party in any litigation, proceeding or action commenced in connection with enforcing any of the provisions of this Agreement shall recover any and all legal expenses incurred in pursuing such litigation, proceeding or action from the non-prevailing Party."

OpenBand maintains that it is a "prevailing Party" because that term "generally means a party that prevails on the merits of the underlying action," even if prevailing on the merits only maintains the status quo. Southern Walk argues that for a party to be "prevailing" requires a material alteration in the legal relationship between the parties—something that cannot occur after a dismissal for lack of jurisdiction.[5] We need not go so far as Southern Walk suggests. For even accepting OpenBand's definition arguendo, OpenBand is not a "prevailing party" in this case because a dismissal for lack of standing does not constitute a determination on the merits. *White Tail Park*, 413 F.3d at 460.

We accordingly affirm the district court's denial of OpenBand's motion for attorneys' fees.

---

[5]Southern Walk borrows its definition from the Supreme Court's construction of statutes allowing fee-shifting by a "prevailing party." *E.g.*, 42 U.S.C. § 1988(b). For a party to be "prevailing" under those statutes, the Supreme Court requires that a "judgment[ ] on the merits [or a] court-ordered consent decree[ ] create [a] 'material alteration of the legal relationship of the parties.'" *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)). Our sister circuits have divided on whether a defendant that successfully moves for dismissal for lack of subject matter jurisdiction can ever be a prevailing party under this definition. *Compare Elwood v. Drescher*, 456 F.3d 943, 948 (9th Cir. 2006) (not a prevailing party), *with Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 930 (7th Cir. 2000) (a prevailing party where dismissal "forecloses the plaintiff's claim"). In this case, we offer no opinion on the proper interpretation of "prevailing party" in those statutory contexts. *See Wendt v. Leonard*, 431 F.3d 410, 414 (4th Cir. 2005) (similarly refusing to weigh in on this division among our sister circuits).

IV.

In sum, we affirm that portion of the district court's judgment dismissing Southern Walk's complaint, but vacate that judgment to the extent that the dismissal was with prejudice, and remand to that court for dismissal of the case without prejudice. Further, we affirm the district court's judgment denying attorneys' fees to OpenBand. We note that nothing in our decision today forecloses Southern Walk, if the facts permit, from filing a new action with the same underlying claim in the district court, and properly pleading standing. *Semtek Int'l Inc.*, 531 U.S. at 505 ("The primary meaning of 'dismissal without prejudice,' . . . is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim."); *see also Lansdowne on the Potomac Homeowners Ass'n*, slip op. at 9-14 (4th Cir. Apr. 5, 2013).

No. 12-1331 *AFFIRMED IN PART AND*
*VACATED AND REMANDED IN PART*
No. 12-2083 *AFFIRMED*