**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1187

MARTY HIERHOLZER; MJL ENTERPRISES, LLC, a Virginia corporation,

Plaintiffs - Appellants,

v.

ISABEL GUZMAN, in her official capacity as Administrator of the Small Business Administration; SMALL BUSINESS ADMINISTRATION,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Raymond A. Jackson, Senior District Judge.  (2:23-cv-00024-RAJ-DEM)

Argued:  October 29, 2024                        Decided:  January 3, 2025

Before DIAZ, Chief Judge, WYNN and THACKER, Circuit Judges.

Reversed in part, affirmed in part, and remanded by published opinion.  Judge Thacker wrote the opinion, in which Chief Judge Diaz and Judge Wynn joined.

**ARGUED:**  Glenn Evans Roper, PACIFIC LEGAL FOUNDATION, Highlands Ranch, Colorado, for Appellants.  Ellen L. Noble, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Joshua P. Thompson, PACIFIC LEGAL FOUNDATION, Sacramento, California, for Appellants.  Kristen Clarke, Assistant Attorney General, Bonnie I. Robin-Vergeer, Teresa Kwong, Appellate Section, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington,

D.C.; Eric S. Benderson, Associate General Counsel for Litigation, David A. Fishman, Deputy Associate General Counsel for Litigation, Office of the General Counsel, UNITED STATES SMALL BUSINESS ADMINISTRATION, Washington, D.C., for Appellee.

———————

THACKER, Circuit Judge:

Marty Hierholzer ("Hierholzer") is the sole owner, president, and chief executive of MJL Enterprises, LLC ("MJL") (collectively "Appellants"). Appellants allege that the Small Business Administration's ("SBA") Section 8(a) Business Development Program ("8(a) Program") discriminated against Hierholzer based on his race. The 8(a) Program employs a race conscious, rebuttable presumption allowing members of certain racial and ethnic groups to establish that they are "socially disadvantaged." 13 C.F.R. § 124.103(a).

Appellants appeal the district court's dismissal of their case based on mootness and lack of standing. As explained below, we reverse the district court's dismissal of the case as moot. However, we affirm the district court's dismissal based on Appellants' inability to establish the elements of Article III standing.

I.

A.

In 1953, Congress enacted the Small Business Act ("the Act") to "aid, counsel, assist, and protect" small businesses, to ensure a "fair proportion" of government contracts go to small businesses, 15 U.S.C. §§ 631(a)–(b), and to "preserv[e] . . . the competitive free enterprise system." *Id.* § 631a. The Act established the SBA to manage several programs to assist the business development and competitive viability of small businesses by providing contract, financial, technical, and management assistance, including programs requiring federal agencies to reserve certain contracts exclusively for small businesses. *See id.* §§ 633, 644(j)(1). The Act includes several programs that create contracting preferences for small businesses in general and for those that satisfy certain criteria,

3

including small businesses owned and controlled by women, *see id.* § 637(m); small businesses owned and controlled by service-disabled veterans, *id.* § 657f-1; and the program at issue here, small businesses owned and controlled by "socially and economically disadvantaged" individuals. *Id.* § 637(a).

Through the 8(a) Program, the SBA provides assistance to small businesses owned and controlled by "socially and economically disadvantaged" individuals. 15 U.S.C. § 637(a). The 8(a) Program authorizes the SBA to enter into agreements for goods and services with other federal agencies and to subcontract those agreements to socially and economically disadvantaged small businesses. *Id.* § 631(f)(2). The Act aims to award at least five percent of the total value of federal contracts to small businesses owned by socially and economically disadvantaged individuals each year, with an overall goal of awarding at least 23 percent of the total value of all contracts in a fiscal year to small businesses. *Id.* §§ 644(g)(1)(A)(i), (iv).

Eligibility for the 8(a) Program is limited to small businesses that are at least 51 percent unconditionally owned and controlled by one or more "socially and economically disadvantaged" individuals who are of good character, are citizens of the United States, and who demonstrate a potential for success in competing in the private sector. *Id.* §§ 637(a)(4)(A), (7)(A); 13 C.F.R. § 124.101.

"Socially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. § 637(a)(5). SBA regulations require that the social disadvantage must have resulted from "circumstances beyond [the individual's]

4

control." 13 C.F.R. § 124.103(a). The SBA regulations further provide that members of certain designated groups, including "Black Americans, Hispanic Americans, Native Americans . . . , Asian Pacific Americans . . . , Subcontinent Asian Americans . . . , and members of other groups designated from time to time by [the] SBA," are entitled to a rebuttable presumption of social disadvantage. *Id.* § 124.103(b)(1). This presumption may be rebutted with "credible evidence to the contrary." *Id.* § 124.103(b)(3). 8(a) Program applicants owned and controlled by individuals who are not members of one of these groups may show social disadvantage by submitting evidence that demonstrates, by a preponderance of the evidence:

> (i) At least one objective distinguishing feature that has contributed to social disadvantage, such as race, ethnic origin, gender, identifiable disability, long-term residence in an environment isolated from the mainstream of American society, or other similar causes not common to individuals who are not socially disadvantaged;
>
> (ii) The individual's social disadvantage must be rooted in treatment which he or she has experienced in American society, not in other countries;
>
> (iii) The individual's social disadvantage must be chronic and substantial, not fleeting or insignificant; and
>
> (iv) The individual's social disadvantage must have negatively impacted on his or her entry into or advancement in the business world. SBA will consider any relevant evidence in assessing this element, including experiences relating to education, employment and business history . . . .
>
> (A)    Education. SBA considers such factors as denial of equal access to institutions of higher education, exclusion from social and professional association with students or teachers, denial of educational honors rightfully earned, and social

5

patterns or pressures which discouraged the individual from pursuing a professional or business education.

(B)    Employment.  SBA considers such factors as unequal treatment in hiring, promotions and other aspects of professional advancement, pay and fringe benefits, and other terms and conditions of employment; retaliatory or discriminatory behavior by an employer; and social patterns or pressures which have channeled the individual into nonprofessional or non-business fields.

(C)    Business history.  SBA considers such factors as unequal access to credit or capital, acquisition of credit or capital under commercially unfavorable circumstances, unequal treatment in opportunities for government contracts or other work, unequal treatment by potential customers and business associates, and exclusion from business or professional organizations.

*Id.* §§ 124.103(c)(1)–(2).  Additionally, the applicant must provide evidence establishing that the purported social disadvantage has "negatively impacted his or her entry into or advancement in the business world."  *Id.* § 124.103(c)(3).

Regardless of how social disadvantage is established, all applicants for the 8(a) Program must be a small business owned by an individual who is both "socially *and* economically disadvantaged."  15 U.S.C. § 637(a)(4)(A)(i)(I) (emphasis supplied).  An economically disadvantaged individual is one whose "ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged."  *Id.* § 637(a)(6)(A); 13 C.F.R. § 124.104(a).  In evaluating economic disadvantage, the SBA "shall consider, but not be limited to [considering], the [individual's] assets and net worth."  15 U.S.C. § 637(a)(6)(A).  SBA regulations provide that the SBA will consider "the

6

personal financial condition of any individual claiming disadvantaged status, including income for the past three years . . . , personal net worth, and the fair market value of all assets . . . ." 13 C.F.R. § 124.104(c). Importantly, the rebuttable presumption that applies regarding social disadvantage does not apply regarding economic disadvantage.

B.

Hierholzer is a service-disabled veteran who served twenty two years in the Navy as a diver before retiring in 2002. As a result of his military career, Hierholzer lives with knee, lower back, and shoulder pain; hearing loss and tinnitus; decreased mobility; and clinically recognized depression and anxiety disorders.

MJL is a small business owned by Hierholzer. MJL provides equipment and office supplies to military bases and Veterans Affairs hospitals, provides high-tech safety and security equipment to first responders, and provides logistical labor and personnel services for Veterans Affairs hospitals.

Hierholzer is of Scottish and German descent and is not a member of a group with a presumption of social disadvantage pursuant to 13 C.F.R. § 124.103(b)(1). Therefore, when MJL applied to the 8(a) Program in 2009 and 2016, it was required to present evidence to support that Hierholzer was socially disadvantaged pursuant to Section 124.103(c). He was not. Therefore, in both 2009 and 2016, the SBA notified Appellants of MJL's ineligibility, "despite [the SBA's] recognition of [Hierholzer's] disabilities and

7

veteran status." J.A. 16.[1] *See generally In re: MJL Enters., LLC*, SBA No. BDPE-566, 2017 WL 8231365, at *1, *7 (Dec. 18, 2017) (detailing MJL's applications and affirming MJL's 2016 denial).

The SBA denied both applications, which included incidents of Hierholzer's claimed social disadvantage, along with supporting evidence. Hierholzer believes that he "would have been accepted into the 8(a) Program without having to prove his social disadvantage if he belonged to one of the favored races listed" in the Act and regulations (i.e., if Hierholzer received a presumption of social disadvantage). J.A. 17. Thus, Appellants allege injury based on an inability to "stand[] on equal footing for 8(a) [P]rogram eligibility"; to "compet[e] for exclusive 8(a) contracting opportunities based on race"; or to "access other benefits provided to 8(a) Program companies," including "access to business development assistance, free training opportunities through the SBA, and federal surplus property access." *Id.* at 18. As a result, Appellants allege that MJL "is at a competitive disadvantage when competing for . . . contracts" and "in accessing the 8(a) Program itself" as compared to "members of minority groups." *Id.* at 18–19.

C.

Appellants sued Isabel Guzman, in her official capacity as Administrator of the SBA, and the SBA (collectively, "the Government") in the Eastern District of Virginia alleging violations of: (i) the Equal Protection Clause of the Fifth Amendment based on

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

SBA's regulations and the Act; and (ii) the Administrative Procedure Act based on the SBA exceeding its statutory authority, acting in an arbitrary and capricious manner, and exercising an unconstitutional delegation of authority by promulgating the regulations setting forth the race conscious presumption of social disadvantage. Appellants seek a declaration that "Section 8(a)'s racial classifications found in 15 U.S.C. §§ 637(a)(5), (8), and 631(f)(1)(b) and 13 C.F.R. § 124.103(a), (b)(1) are facially unconstitutional"; permanent injunctions against the enforcement of the Section 8(a) Program's rebuttable presumption of social disadvantage; and costs, attorneys' fees, and expenses. J.A. 26.

The Government moved to dismiss, arguing that the district court lacked subject matter jurisdiction because Appellants lacked standing. Specifically, the Government argued that Appellants could not establish an injury in fact because they were not "able and ready to bid" on 8(a) Program contracts. J.A. 98 (quoting *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)). Additionally, the Government argued that Appellants had not established an injury in fact because they did not adequately allege social or economic disadvantage. The Government argued that Appellants failed to plausibly allege social disadvantage in the absence of the race conscious presumption, highlighting that Appellants were already twice denied entry to the 8(a) Program based on their failure to establish social disadvantage and that the complaint failed to include any allegations that would yield a different result. The Government also argued that, even if Appellants had alleged economic disadvantage, Appellants would still fail to demonstrate Hierholzer's economic disadvantage as required by the 8(a) Program because Appellants "participated in thousands of contract actions with

9

federal government agencies totaling close to $130 million dollars." J.A. 47. The Government further argued that Appellants did not plausibly allege causation, particularly considering the lack of pleading regarding economic disadvantage -- meaning that Appellants had not plausibly alleged that they could participate in the 8(a) Program without satisfying the race conscious presumption. Finally, the Government argued that Appellants did not plausibly allege redressability because a favorable decision enjoining the use of the race conscious presumption would not alter Appellants' position, given their inability to establish either social or economic disadvantage as illustrated by their two previous denials.

Appellants opposed the motion to dismiss. Appellants argued that they plausibly pled the elements of standing. To rebut the Government's arguments regarding lack of standing, Appellants attached a declaration by Hierholzer in which he averred that he believed himself to be economically disadvantaged. The declaration noted that Hierholzer had a net worth of $850,000 and that his adjusted gross income averaged over the prior three years did not exceed $400,000. Therefore, Appellants asserted they had alleged standing.

In the midst of the litigation of this lawsuit, the District Court for the Eastern District of Tennessee enjoined the SBA from using the rebuttable presumption of social disadvantage in 13 C.F.R. § 124.103(b) in administering the 8(a) Program. *See Ultima Servs. Corp. v. U.S. Dep't of Agric.*, 683 F. Supp. 3d 745, 752 (E.D. Tenn. 2023). The district court in the *Ultima* case held that the rebuttable presumption violated Ultima's Fifth Amendment right to equal protection of the law. Thereafter, the Government moved to stay proceedings in the present case pending a final order in *Ultima*. In the motion to stay,

10

the Government included two declarations of John W. Klein, the deputy general counsel and associate general counsel for procurement law at the SBA. Klein's declarations explained changes to the 8(a) Program subsequent to the *Ultima* injunction:

- "Since the Court's July 19, 2023 Order, SBA is making all social disadvantage determinations pursuant to the standard for nonpresumptive applicants as directed in 13 C.F.R. § 124.103(c). This includes social disadvantage determinations for new and pending applications from individual business owners and for 8(a) participants that previously relied on the rebuttable presumption."

- "The social disadvantage determination involves reviewing a business owner's narrative of social disadvantage and ensuring that the information provided satisfies each of the elements in 13 C.F.R. § 124.103(c) by a preponderance of the evidence."

- SBA reevaluated both *previously admitted* applicants who had been admitted using the rebuttable presumption and applicants with *pending awards* based on the nonpresumptive social disadvantage standard in 13 C.F.R. § 124.103(c). SBA required previously admitted and pending participants to submit evidence of social disadvantage for reevaluation.

- SBA created a portal for previously admitted applicants to submit evidence of social disadvantage and set a submission deadline of September 30, 2023.

- SBA began making social disadvantage determinations "for any contract action [requiring] an SBA eligibility determination."

- SBA had suspended pending applications after the *Ultima* July 19, 2023, order, but it reopened its online portal for new submissions on September 29, 2023.

- All 8(a) Program applicants are required to submit evidence of social disadvantage.

11

J.A. 129–35.

The district court held a hearing regarding the Government's motion to dismiss and motion to stay. At the hearing, the Government argued that "the claims for relief that [Appellants] sought in their complaint simply don't exist anymore" because "the presumption at issue in th[e] case has been purged from the process" following the *Ultima* injunction. J.A. 138, 140. Additionally, the Government argued that the changes it made to the program following the injunction to remove the race conscious presumption emphasize the Government's point that Appellants are unable to establish injury, causation, or redressability, and, therefore, do not have standing.

For their part, Appellants argued that that no final judgment had been issued in the *Ultima* case, so the question remained "whether SBA [was] continuing to provide a discriminatory approach to those who would have fallen under the presumption." J.A. 145. Appellants also noted that the Government had not indicated whether it would appeal the *Ultima* decision and highlighted that the SBA's changes to the 8(a) Program should not be considered because standing is determined at the time that a complaint is filed.

The district court granted the Government's motion to dismiss, holding that Appellants "no longer have a personal stake in the outcome of th[e] litigation. Therefore, [Appellants'] claim is moot . . . ." J.A. 175. The district court also held that Appellants failed to establish the elements of standing because they did not allege eligibility and did not sufficiently plead economic disadvantage in the first instance or social disadvantage in the absence of the presumption. And the district court explained that Appellants' position would not change if their requested relief were granted because Appellants would still have

to establish social and economic disadvantage. The district court denied as moot the motion to stay.

Appellants timely appealed.

## II.

We review de novo the district court's determination that a case is moot. *See S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015) (citing *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 762 (4th Cir. 2011)). We also review de novo the legal question of whether a plaintiff has standing to bring a claim. *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (citing *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019)).

## III.

## A.

Appellants first argue that the district court erred in holding that the case is moot.

Pursuant to Article III of the Constitution, the jurisdiction of the federal courts is limited to "Cases" and "Controversies." *See* U.S. Const. art. III, § 2. "When a case or controversy ceases to exist, the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." *S.C. Coastal Conservation League v. U.S. Army Corps of Engineers*, 789 F.3d 475, 482 (4th Cir. 2015) (citation omitted). "A case can become moot due either to a change in the facts or a change in the law." *Id.* (citing *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983)); *see also Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018) ("A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (internal quotation marks

13

omitted) (quoting *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011))).

"If an intervening circumstance deprives the plaintiff of a personal stake in the outcome . . . at any point during litigation, the action . . . must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) (internal quotation marks omitted) (citation omitted). "A case becomes moot, however, only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* at 161 (internal quotation marks omitted) (citation omitted).

The district court held that because the "SBA changed the 8(a) Program application and removed the race conscious presumption from all stages of the process[,] [Appellants] no longer have a personal stake in the outcome of this litigation. Therefore, [Appellants'] claim is moot . . . ." J.A. 175.

On appeal, Appellants argue that the SBA has not conceded that the race conscious "presumption is unconstitutional or made any permanent changes in response to the *Ultima* case; it has only paused use of the presumption so as to not violate the . . . injunction." Appellants' Opening Br. at 35 (citing *Ultima Servs. Corp. v. U.S. Dep't of Agric.*, 683 F. Supp. 3d 745, 774 (E.D. Tenn. 2023)). Appellants further argue in their reply brief that the district court's order in *Ultima* is not final because it may still be appealed. To its credit, the Government concedes that the case is not moot: "in the absence of a final judgment in *Ultima*, [Appellants'] claim is technically not moot." Gov't's Resp. Br. at 39 n.9.

Here, the subsequent events, namely the injunction in *Ultima* and the changes to the 8(a) Program as a result of the injunction, have not rendered Appellants' claims moot.

14

Despite the changes made to the 8(a) Program by the SBA pursuant to the injunction, the controversy has not ceased to exist. *See S.C. Coastal Conservation League*, 789 F.3d at 482. The controversy is still live because the *Ultima* decision has not resulted in a final judgment. *See Deal*, 911 F.3d at 191.

Therefore, the district court erred in holding that Appellants' case is moot. We reverse.

### B.

Appellants next argue that the district court erred in holding that Appellants lacked standing to challenge the 8(a) Program. The Government responds that Appellants have experienced no injury traceable to the 8(a) Program because they are simply ineligible, so a favorable decision in Appellants' favor would not redress their claimed injury. This is so, according to the Government, because, even without the race conscious presumption, Appellants cannot compete for 8(a) Program contracts given that Hierholzer is not socially or economically disadvantaged.

The Supreme Court has long understood the cases and controversies limitation imposed by Article III of the Constitution "to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) (internal quotation marks omitted) (quoting *Carney v. Adams*, 592 U.S. 53, 58 (2020)). The Court "has identified the doctrine of standing as a means to implement that requirement." *Id.*

15

In order to possess Article III standing to sue, plaintiffs must plausibly allege: "(1) [they] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). These requirements for standing ensure that the plaintiff has "a personal stake in the outcome." *Gill v. Whitford*, 585 U.S. 48, 54 (2018) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Appellants, as "the parties invoking federal jurisdiction, bear the burden of establishing these elements." *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 899 (4th Cir. 2022) (cleaned up) (quoting *Spokeo, Inc.*, 578 U.S. at 338).

1.

Injury in Fact

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Laufer*, 60 F.4th at 161 (internal quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The 'threatened injury must be certainly impending,' and '[a]llegations of possible future injury' are insufficient." *Buscemi v. Bell*, 964 F.3d 252, 259 (4th Cir. 2020) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "An injury reliant on a highly attenuated chain of possibilities does not qualify as being certainly impending." *Id.* (cleaned up). "The 'injury in fact' in an equal protection case . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (citation omitted). "And in the

16

context of a challenge to a set-aside program, the injury in fact is the inability to compete on an equal footing in the bidding process, not the loss of a contract." *Id.* (citation omitted). Therefore, "a party challenging a set-aside program . . . need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Id.*

The district court held that Appellants' injury was not "'concrete' or 'actual or imminent'" because they failed to allege that they lost contract bids as a result of the race conscious presumption. J.A. 168. Moreover, the district court held that Appellants failed to allege that Hierholzer was economically disadvantaged pursuant to 13 C.F.R. § 124.104, so Appellants could not demonstrate that they were "able and ready" to bid on 8(a) Program contracts due to "[Appellants'] own failure to meet the 8(a) Program eligibility requirements -- social and economic disadvantage." J.A. 169.

On appeal, Appellants argue that it is unnecessary to show economic disadvantage, that the race conscious presumption caused their injury because it is a "barrier that denies them equal treatment," and that "admission is more difficult for [Appellants] than for an applicant who qualifies" for the presumption. Appellants' Opening Br. at 22–23, 26–28.

The Government counters that Appellants' complaint fails to allege necessary facts to support finding that Appellants suffered an injury in fact because it fails to allege (1) that Appellants are able and ready to bid on contracts, or (2) that they could meet the race neutral requirements of the 8(a) Program. In support of its argument, the Government highlights Appellants' receipt of $130 million in government contracts since 2006, their

17

previous two denials of admission based on Hierholzer's lack of social disadvantage, and the fact that Appellants pled no facts indicating a change in circumstances since the denials.

Appellants contest the district court's holding that they failed to make a showing of "lost contracts." Appellants' Opening Br. at 23–25. However, the Government responds that "without any allegations that plaintiffs have lost business in the *past* or that they *are ready and able to bid on future business* set aside in the 8(a) Program, their alleged injury is not at all concrete, particularized, imminent, or certainly impending." Gov't's Resp. Br. at 30–31 (emphasis supplied) (citing *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024) ("[R]equiring the plaintiff to show an injury in fact . . . screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action.")).

We hold that, although Appellants were not required to allege the loss of contract bids in order to establish an injury in fact as a result of the race conscious presumption, they were still required to demonstrate that they were "able and ready" to bid on contracts. *City of Jacksonville*, 508 U.S. at 666. And, as the district court held, Appellants failed to demonstrate that they were "able and ready" to bid on 8(a) Program contracts. *Id.*

Here, the 8(a) Program's basic requirements are that each applicant must be: (1) a small business; (2) unconditionally owned and controlled by; (3) a socially disadvantaged individual; (4) who is also economically disadvantaged. 15 U.S.C. § 637(a)(4)(A); 13 C.F.R. § 124.101.

Appellants' complaint acknowledges that the 8(a) Program benefits socially and economically disadvantaged businesses and explains that Appellants unsuccessfully

18

applied for the 8(a) Program in 2009 and 2016. Despite Appellants' belief that MJL "would qualify for 8(a) participation" based on "'cultural bias' [experienced by Hierholzer] due to his status as a service-disabled veteran," the SBA rejected Hierholzer as not socially disadvantaged twice. J.A. 11–12, 17. Appellants' complaint includes three pages dedicated to explaining their claimed bases for social disadvantage (physical and psychological disabilities) but does not contain any pleading with regard to Hierholzer's economic disadvantage, as required by the Act and implementing regulations. 15 U.S.C. § 637(a)(6)(A) (defining individuals as economically disadvantaged when their "ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged"); 13 C.F.R. § 124.104(c) (requiring submission of information relevant to the applicant's personal financial condition, including income for the prior three years, personal net worth, and the fair market value of all assets).

As a result, Appellants failed to allege in their complaint economic disadvantage sufficient to "demonstrate" that they are "able and ready" to bid or that the alleged discriminatory policy is their only barrier to participation in the 8(a) Program on an equal basis. *City of Jacksonville*, 508 U.S. at 666. Nor can Appellants' later filed declaration, in which Hierholzer attempts to allege economic disadvantage, cure Appellants' pleading deficiency. We have held that parties may not "amend their complaints through briefing." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *see also U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 459 n.8 (4th Cir. 2013) ("[A plaintiff] cannot cure pleading deficiencies in

19

the complaint with later-filed supporting documentation [on a motion to dismiss].").  Even if Hierholzer's declaration was sufficient to allege economic disadvantage, Appellants still failed to plead that they could satisfy the 8(a) Program's race neutral social disadvantage requirements.

Appellants contest that they were required to plead facts to illustrate their basic eligibility to the 8(a) Program.  Oral Argument at 04:59–5:25, *Hierholzer v. Guzman*, No. 24-1187 (4th Cir. Oct. 29, 2024), https://www.ca4.uscourts.gov/OAarchive/mp3/24-1187-20241029.mp3 ("Oral Argument") ("It simply makes no sense to say that you have to prove social disadvantage in order to challenge the presumption of social disadvantage . . . . [I]f a plaintiff can already prove social disadvantage to SBA's satisfaction, that's when they arguably would have a standing problem.").  But, it is elemental that "the party invoking federal jurisdiction, bears the burden of establishing" standing. *McMaster*, 24 F.4th at 899. Therefore, contrary to Appellants' assertion, they were required to plead facts to support that they would be eligible for the program -- i.e., that Hierholzer is socially and economically disadvantaged.  Because Appellants failed to do so, Appellants have not demonstrated that they suffered an injury in fact.

As the Government aptly stated, "without any allegations that . . . [Appellants] are ready and able to bid on future business" through the 8(a) Program, Appellants' "alleged injury is not at all concrete, particularized, imminent, or certainly impending."  Gov't's Resp. Br. at 30.  Appellants' alleged injury is, therefore, entirely conjectural or hypothetical rather than actual or imminent.  *See Laufer*, 60 F.4th at 161.  And Appellants do not have a "personal stake in the outcome" of the controversy because, as the district court noted,

20

Appellants' failure to allege an injury is based on "their own failure to [demonstrate] the 8(a) Program eligibility requirements [of] social and economic disadvantage." J.A. 169. Appellants' alleged injury is a "generally available grievance about government" insufficient to confer standing. *Gill*, 585 U.S. at 54.

Therefore, we affirm the determination of the district court that Appellants failed to allege an injury in fact.

2.

Traceability

"To be 'fairly traceable,' there must be 'a causal connection between the injury and the conduct complained of.'" *Laufer*, 60 F.4th at 161 (quoting *Lujan*, 504 U.S. at 560).

The district court held that Appellants could not establish that the race conscious presumption caused their harm because Appellants failed to meet the required criteria -- social and economic disadvantage -- for the 8(a) Program even without the presumption. Again, the district court held that the pleading deficiency could not be cured with Appellants' later filed declaration in which Hierholzer attempted to establish his economic disadvantage because the declaration was "inadequate to cure [the] deficiencies in the complaint." J.A. 171. The district court also focused on Appellants' history of being denied by the 8(a) Program for failure to establish social disadvantage.

On appeal, Appellants argue that they need not illustrate social disadvantage because the presumption makes it harder to get into the 8(a) Program and that their injury can be traced to the SBA's enforcement of the 8(a) Program. The Government counters

21

that Appellants are unable to meet the program requirements, and, therefore, Appellants fail to adequately allege causation.

Here, again, the Government is correct. There is no causal connection between Appellants' claimed injury (i.e., that it is more difficult to get into the 8(a) Program) and the conduct complained of (i.e., the existence of the presumption). Appellants cannot meet the requirements of the 8(a) Program regardless of the presumption. In arguing otherwise, Appellants wish to convert the 8(a) Program into a double dipping opportunity. *See* J.A. 15–17 (discussing the "social disadvantages stemming from his service-disabled veteran status"). 15 U.S.C. § 657f-1 exists to assist small, service-disabled veteran owned businesses. And Appellants have benefitted from that program immensely. *See* J.A. 58–61 (discussing the fact that Appellants have been awarded 3,630 contracts totaling nearly $130 million since 2006 -- $76,059,043 of which was awarded through the Service-Disabled Veteran Owned Small Business Program).

In contrast, the 8(a) Program was not created to assist small, service-disabled veteran owned businesses. It was created to assist eligible, socially and economically disadvantaged small business owners. Yet, as the district court held, Appellants are simply ineligible for the program because of their failure to allege economic disadvantage and their inability to prove social disadvantage -- the core requirements that must be met for admission into the program.

Therefore, we affirm the determination of the district court that Appellants failed to allege causation.

22

3.

Redressability

For Appellants to establish redressability, "'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Laufer*, 60 F.4th at 161 (quoting *Lujan*, 504 U.S. at 561). "Additionally, where injunctive relief is sought, the plaintiff must show a 'real or immediate threat that [they] will be wronged again.'" *Id.* (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)).

The district court held that Appellants failed to plausibly allege that striking down the race conscious presumption would redress Appellants' alleged injury. Nor did the district court accept Appellants' argument that the presumption made it less likely that Appellants would be granted 8(a) Program eligibility, which the district court called "pure speculation." J.A. 173.

Appellants argue that the elimination of the presumption of social disadvantage would redress the difficulty that they experienced in getting into the 8(a) Program. The Government counters that even if Appellants are granted the relief sought -- an injunction against the presumption – Appellants' position would not change because, as the district court pointed out, the presumption is severable from the rest of the regulation, which would simply continue to operate without the presumption and would continue to bar Appellants from the program based on Hierholzer's previous and continued lack of social and economic disadvantage. *See* Oral Argument at 14:56–15:36 ("[The] relief [Appellants] seek . . . happened over a year ago . . . . [And Appellants] have already twice failed to make [a showing of social disadvantage]. They are in no different a position today than

23

they were when they previously applied to the program . . . .  Tellingly, in the year since the presumption has been eliminated, [Appellants] have not reapplied to the program. Because they failed to allege that they can satisfy those race neutral eligibility requirements for the 8(a) Program, their injury cannot be redressed.").

Appellants counter that their prior "rejections for failure to satisfy the social disadvantage criterion underscore the inherent inequality of SBA's process."  Appellants' Reply Br. at 13.

But it is clear that a favorable decision would not redress Appellants' claimed injury. Despite Appellants' attempts to argue otherwise, their prior rejections underscore their ineligibility for the 8(a) Program.  Even if Appellants were granted an injunction, the race neutral criteria that Appellants would face upon application to the 8(a) Program would remain the same.  *See* 15 U.S.C. § 637(a)(4)(A)(i)(I) (requiring all applicants for the 8(a) Program to be both "socially *and* economically disadvantaged" (emphasis supplied)). Therefore, Appellants would still be required to demonstrate social and economic disadvantage, among other requirements, to be admitted to the program -- which they cannot do.

On multiple occasions, Appellants have been unable to meet the program requirements -- hurdles that would continue to bar Appellants from the 8(a) Program even if their requested relief were granted.  For that reason, Appellants have not and cannot show a "real or immediate threat that [they] will be wronged again" because they were not wronged in the first place -- they were simply ineligible.  *Laufer*, 60 F.4th at 161 (internal quotation marks omitted) (citation omitted).  Because Appellants' claimed injury cannot

24

be redressed by a favorable decision, Appellants have failed to establish the redressability requirement of standing.

Therefore, there is no "genuine, live dispute between adverse parties." *Laufer*, 60 F.4th at 161. Consequently, we affirm the district court's determination that Appellants have failed to establish injury in fact, causation, or redressability, and they lacked Article III standing to sue. We affirm the district court's dismissal based on a lack of subject matter jurisdiction.

## IV.

For these reasons, the district court's order is reversed in part and affirmed in part. We remand for further proceedings consistent with this opinion.

*REVERSED IN PART, AFFIRMED IN PART, AND REMANDED*